UNITED STATES, Appellee

v.

Stacey S. BROOKS, Staff Sergeant
U.S. Air Force, Appellant

No. 06-0060

Crim. App. No. 35420

United States Court of Appeals for the Armed Forces

Argued November 15, 2006

Decided January 30, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.

STUCKY and RYAN, JJ., did not participate.


Counsel

For Appellant:  Captain Vicki A. Belleau (argued); Lieutenant
Colonel Mark R. Strickland and Major Sandra K. Whittington (on
brief).

For Appellee:  Major Kimani R. Eason (argued); Colonel Gerald R.
Bruce, Lieutenant Colonel Robert V. Combs, Lieutenant Colonel
Gary F. Spencer, and Major Nurit Anderson (on brief).

Military Judge:  David F. Brash


**This opinion is subject to revision before final publication.**

United States v. Brooks, No. 06-0060/AF

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Stacey S. Brooks was convicted at a general court-martial of two specifications of indecent liberties with a female under the age of sixteen, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). He was sentenced to a dishonorable discharge, eighteen months confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority reduced the confinement to fourteen months and approved the balance of the sentence. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence as approved by the convening authority. United States v. Brooks, No. ACM 35420, 2005 CCA LEXIS 277, 2005 WL 2129856 (A.F. Ct. Crim. App. 2005). We granted review of five issues and specified another for review.[1]

---

[1] On August 10, 2006, we granted review of the following issues:

I. WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE ALLOWED THE ADMISSION OF REPEATED INSTANCES OF HUMAN LIE DETECTOR TESTIMONY AND THEN FAILED TO PROVIDE PROMPT, CURATIVE INSTRUCTIONS TO THE MEMBERS.

II. WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE ALLOWED DR. [A] TO GIVE IMPROPER PROFILE EVIDENCE THAT CHILDREN RARELY MAKE FALSE CLAIMS OF SEXUAL ABUSE.

III. WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE DID NOT INSTRUCT THE COURT MEMBERS TO DISREGARD ARGUMENT THAT TRIAL COUNSEL WAS CONVINCED BEYOND A

United States v. Brooks, No. 06-0060/AF

An expert may testify about matters within his or her area of expertise where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Military Rule of Evidence (M.R.E.) 702. But "an expert may not testify regarding the credibility or believability of a victim, or 'opine as to the guilt or innocence of an accused.'" United States v. Cacy, 43 M.J. 214, 217 (C.A.A.F. 1995) (quoting United States v. Suarez, 35 M.J. 374, 376 (C.M.A. 1992)); see United States v. Foster, 64 M.J. ___ (7) (C.A.A.F. 2007). Brooks claims that the Government's expert on child sexual abuse, Dr. Marvin W. Acklin

---

REASONABLE DOUBT THAT THE CHILD VICTIM WAS TELLING THE TRUTH.

IV. WHETHER THE CHARGES AND SPECIFICATIONS MUST BE DISMISSED BECAUSE THE STAFF JUDGE ADVOCATE EXCLUDED "ALL OFFICERS WHO WOULD LIKELY BE CHALLENGED IF SELECTED AS MEMBERS" FROM THE POOL OF POTENTIAL COURT MEMBERS, AND THE CONVENING AUTHORITY, IN TURN, EXCLUDED THEM FROM THE COURT-MARTIAL SELECTION PROCESS.

V. WHETHER THE SERIES OF ERRORS CUMULATIVELY AND MATERIALLY PREJUDICED APPELLANT'S SUBSTANTIAL RIGHT TO A FAIR AND IMPARTIAL TRIAL THEREBY NECESSITATING REVERSAL OF HIS CONVICTIONS.

We also specified the following issue for review:

VI. WHETHER THE CONVENING AUTHORITY ERRONEOUSLY APPLIED ARTICLE 58b(b), UCMJ.

64 M.J. 76-77 (C.A.A.F. 2006).

Jr., provided inadmissible "profile" evidence when he testified about the percentage of false claims of sexual abuse made by children.  Although Brooks failed to object to the testimony about which he now complains, we conclude that the military judge plainly erred by allowing testimony that was the functional equivalent of vouching for the credibility or truthfulness of the victim.  Finding plain error, we reverse. In light of our disposition of this issue, we need not address the remaining issues.

## Background

The charges against Brooks arose from his alleged improper sexual activities with a five-year-old child who Brooks and his wife would occasionally baby-sit.  As part of its case-in-chief, the prosecution presented the testimony of Dr. Acklin, who was recognized as an expert in the field of clinical psychology. Dr. Acklin testified generally about the cognitive skills of children and the ability of a child to distinguish between what is true and what is not true.  Included in this testimony was the subject of suggestibility, which Dr. Acklin defined as "the influence that a person would exercise on the accuracy of a child's recall."

With respect to the victim in this case, Dr. Acklin performed a mental evaluation and concluded that she was a normal little girl who could distinguish between the truth and

lies.  During cross-examination, Dr. Acklin stated that he did not re-interview the victim about the events supporting the charges because, in part, he was concerned about suggestibility. Defense counsel inquired into the ability of a child to create stories or fabricate, as well as further inquiring into how repeated interviews could result in information or belief becoming fixed in the mind of the child.

On re-direct examination trial counsel asked questions about the motivations a child may have to lie.  Defense counsel objected, challenging Dr. Acklin's expertise to state an opinion in that area.  The objection was overruled and Dr. Acklin then testified about false sexual abuse allegations arising from misinterpretation by the listener and the significant degree of sophistication that would be required for a child to wholly fabricate a sexual abuse allegation.  The testimony continued:

> [TC]:  In your experience, in your professional medical experience, how frequency, how frequently, excuse me, do you see cases of false allegations?

> [Dr. Acklin]:  I believe I testified at the Article 32 Hearing that it's about a five percent level.  That's considered to be about, interestingly enough, the level of false allegations one encounters in the business and in research.  It ranges anywhere from five to twenty percent, depending on the sample that you look at, but it's generally considered to be, what's called a low base-rate phenomenon, which is. . . not that infrequent.

> Once you take away misinterpretation, then it even drops even further, because then we're talking about the pure fabricated sex abuse allegation.  And, the general sense of that in the divorce business,

>       where they tend to occur at the greatest frequency, is
>       it's two to five percent.

There was neither an objection nor cautionary instruction given
with respect to this testimony.

In addition to standard instructions on determining
credibility and expert witnesses, the military judge instructed:

>       Only you, the members of the court determine the
>       credibility of the witnesses and what the fact[s] of
>       this case are.  No expert witness or other witness can
>       testify that the alleged victim's account of what
>       occurred is true or credible, that the expert believes
>       the alleged victim, or that a sexual encounter
>       occurred.  To the extent that you believed that Dr.
>       Acklin testified or implied that he believes the
>       alleged victim, that a crime occurred, or that the
>       alleged victim is credible, you may not consider this
>       as evidence that a crime occurred or that the alleged
>       victim is credible.

## Discussion

Brooks asserts that expert testimony concerning the
percentage of children who make false claims of sexual abuse was
improper because it was "profile" evidence and because it
suggested the victim was credible.  The Government responds that
there was no improper "profile" evidence.  Rather, the
statistical evidence about children lying about incidents of
sexual abuse was permissible in response to claims that the
victim had fabricated the allegations of abuse by Brooks.
Alternatively, the Government asserts that any error in
admitting this evidence did not substantially affect the outcome
of the case.

6

United States v. Brooks, No. 06-0060/AF

Where relevant, M.R.E. 608 permits a witness with an adequate foundation to render an opinion or reveal the reputation of another witness for truthfulness. But this court has been resolute in rejecting the admissibility of so-called human lie detector testimony,[2] which we have described as: "an opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case." United States v. Kasper, 58 M.J. 314, 315 (C.A.A.F. 2003). Neither a lay nor an expert witness has the foundation or expertise to opine that an individual is or is not telling the truth. Id.; United States v. Birdsall, 47 M.J. 404, 410 (C.A.A.F. 1998); see also Foster, 64 M.J. at ___ (7).[3]

---

[2] See, e.g., United States v. Kasper, 58 M.J. 314, 315 (C.A.A.F. 2003) ("[A]n expert on the subject of child abuse is not permitted to testify that the alleged victim is or is not telling the truth as to whether the abuse occurred."); United States v. Birdsall, 47 M.J. 404, 410 (C.A.A.F. 1998) ("[T]he expert in child abuse may not act as a human lie detector for the court-martial."); United States v. Cacy, 43 M.J. 214, 218 (C.A.A.F. 1995) ("We do not allow an expert to opine that a victim is telling the truth . . . ."); United States v. Harrison, 31 M.J. 330, 332 (C.M.A. 1990) ("It is impermissible for an expert to testify about his or her belief that a child is telling the truth regarding an alleged incident of sexual abuse."); United States v. Arruza, 26 M.J. 234, 237 (C.M.A. 1988) ("[C]hild-abuse experts are not permitted to opine as to the credibility or believability of victims or other witnesses."); see also United States v. Petersen, 24 M.J. 283, 284 (C.M.A. 1987) ("We are skeptical about whether any witness could be qualified to opine as to the credibility of another.").

[3] We have identified three reasons supporting the prohibition against experts testifying as human lie detectors. "First, determination of truthfulness 'exceeds the scope of a witness' expertise, for the expert lacks specialized knowledge . . . to

United States v. Brooks, No. 06-0060/AF

In United States v. Harrison, 31 M.J. 330, 332 (C.M.A.

1990), we articulated the permissible limits of expert testimony

in child sexual abuse cases such as the case before us now:

> An expert may testify as to what symptoms are found among children who have suffered sexual abuse and whether the child-witness has exhibited these symptoms.  He or she may also "discuss 'various patterns of consistency in the stories of child sexual abuse victims and compar[e] those patterns with patterns in . . . [the victim's] story.'"  However, to put "an impressively qualified expert's stamp of truthfulness on a witness' story goes too far."  An expert should not be allowed to "'go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.'"  (citations omitted).

We review a military judge's decision to admit expert

testimony under an abuse of discretion standard.  United States

v. Shelton, 64 M.J. 32, 37 (C.A.A.F. 2006); United States v.

Barnett, 63 M.J. 388, 394 (C.A.A.F. 2006); Kasper, 58 M.J. at

318.  However, Brooks did not object to the testimony about

which he now complains.  Where an appellant has not preserved an

objection to evidence by making a timely objection, that error

determine if a child-sexual-abuse victim [is] telling the truth'" and therefore cannot "assist the trier of fact" as required under Military Rule of Evidence (M.R.E.) 702 before expert testimony is permissible. Kasper, 58 M.J. at 315 (quoting Birdsall, 47 M.J. at 410).  Second, such testimony violates the limitations of M.R.E. 608.  Id.; Arruza, 26 M.J. at 237 (citing Petersen, 24 M.J. at 284).  Third, human lie detector testimony encroaches into the exclusive province of the court members to determine the credibility of witnesses. Kasper, 58 M.J. at 315; United States v. Robbins, 52 M.J. 455, 458 (C.A.A.F. 2000) (citing Birdsall, 47 M.J. at 410); Cacy, 43 M.J. at 218.

United States v. Brooks, No. 06-0060/AF

will be forfeited in the absence of plain error.  M.R.E. 103(d).

To demonstrate that relief is warranted under the plain error

doctrine, an appellant must show that:  (1) there was error; (2)

the error was plain or obvious; and (3) the error was materially

prejudicial to his substantial rights.  United States v.

Fletcher, 62 M.J. 175, 179 (C.A.A.F. 2005); United States v.

Washington, 63 M.J. 418, 424 (C.A.A.F. 2006); United States v.

Powell, 49 M.J. 460, 463 (C.A.A.F. 1998).  Our standard of

review for determining whether there is plain error is de novo.

United States v. Gudmundson, 57 M.J. 493, 495 (C.A.A.F. 2002)

(citing United States v. Kho, 54 M.J. 63, 65 (C.A.A.F. 2000)).

       We disagree with Brooks' characterization of Dr. Acklin's

testimony that quantified the percentage of child sexual abuse

victims who lied as "profile" evidence.  In United States v.

Bresnahan, 62 M.J. 137 (C.A.A.F. 2005), we stated:

> Profile evidence is defined as "evidence that presents
> a 'characteristic profile' of an offender, such as a
> pedophile or child abuser, and then places the
> accused's personal characteristics within that profile
> as proof of guilt."  Generally, the use of any
> "profile" characteristic as evidence of guilt or
> innocence is improper at a criminal trial.

Id. at 146 (footnotes omitted).  As we have noted in our cases

dealing with alleged profiling evidence, the focus is upon using

a profile as evidence of the accused's guilt or innocence, and

not upon using a characteristic profile to support or attack a

witness's or victim's credibility or truthfulness.  See id.;

9

United States v. Brooks, No. 06-0060/AF

United States v. Hays, 62 M.J. 158, 166 (C.A.A.F. 2005); United States v. Traum, 60 M.J. 226, 234-35 (C.A.A.F. 2004); United States v. Huberty, 53 M.J. 369, 373 (C.A.A.F. 2000); United States v. Banks, 36 M.J. 150, 161 (C.M.A. 1992).  That is not to say, however, that this credibility quantification testimony is or should be admissible.  To the contrary, such evidence implicates the very concerns underlying the prohibition against human lie detector testimony.

We conclude that this testimony invaded the province of the court members to determine the credibility of the victim and violated the limitations of M.R.E. 608 on admissible testimony relating to truthfulness.  In Powell v. State, 527 A.2d 276 (Del. 1987), the Delaware Supreme Court addressed an expert's statement that "ninety-nine percent of the alleged victims involved in sexual abuse treatment programs in which she was also involved 'have told the truth.'"  Id. at 278.  Even though the defense elicited this statement during voir dire of the expert, the Delaware court deemed the admission of this statement "plain error."  Id. at 279.

The court found that this "percentage" testimony exceeded the permissible bounds of expert testimony permitted in child sexual abuse prosecutions.  Id.  While the expert "'can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits,'"

10

Birdsall, 47 M.J. at 409 (quoting United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993)), the expert should not be permitted to give testimony that is the functional equivalent of saying that the victim in a given case is truthful or should be believed.

Dr. Acklin testified that false allegations generally occur in these types of cases about five percent of the time. However, when "misinterpretation" was taken away, Dr. Acklin stated that figure drops even further. Based on divorce cases where false accusations were the most frequent, Dr. Acklin said that the rate was two to five percent. In this case, which does not involve divorce, Dr. Acklin's statement suggested that there was better than a ninety-eight percent probability that the victim was telling the truth. This testimony provided a mathematical statement approaching certainty about the reliability of the victim's testimony. This testimony goes directly to the core issue of the victim's credibility and truthfulness. We conclude that admitting this testimony was error, and that the error was plain and obvious. See Kasper, 58 M.J. at 319; Powell, 527 A.2d at 280.

Having concluded that there was error and that the error was plain or obvious, we must next determine whether Brooks has sustained his burden of demonstrating that the error materially prejudiced his substantial rights. Brooks argues that Dr.

Acklin's quantification of the victim's credibility was not outweighed by a cautionary instruction that was given in response to a defense objection to previous credibility testimony by Dr. Acklin.  In addition, Brooks claims that the prejudice in this case had become fixed before the military judge gave his closing instruction on determining credibility. The Government argues that any error had no affect on the outcome of this case.  The Government urges that the earlier cautionary instruction and the military judge's closing instruction on credibility were sufficient to cause the members to disregard any expert testimony that the victim was truthful.

We are mindful of the instruction to disregard one of Dr. Acklin's previous comments and the instruction on credibility given by the military judge.  Nonetheless, several factors weigh against concluding that the members were unaffected by Dr. Acklin's quantification of the victim's probable truthfulness. This case hinged on the victim's credibility and medical testimony.  There were no other direct witnesses, no confession, and no physical evidence to corroborate the victim's sometimes inconsistent testimony.  Any impermissible evidence reflecting that the victim was truthful may have had particular impact upon the pivotal credibility issue and ultimately the question of guilt.  The testimony "impart[ed] an undeserved scientific stamp of approval on the credibility of the victim[] in this case."

United States v. Brooks, No. 06-0060/AF

Birdsall, 47 M.J. at 410; see also Arruza, 26 M.J. at 237
(noting that to permit an expert to opine as to the truthfulness
of the victim "'puts an impressively qualified expert's stamp of
truthfulness on a witness' story'" (quoting United States v.
Azure, 801 F.2d 336, 340 (8th Cir. 1986))).

In addition, because this credibility quantification
testimony invaded the province of the members, we cannot say
with any confidence that the members were not impermissibly
swayed and thus that they properly performed their duty to weigh
admissible evidence and assess credibility.  Concerning similar
human lie detector testimony, we have noted that "the military
judge must issue prompt cautionary instructions to ensure that
the members do not make improper use of such testimony."
Kasper, 58 M.J. at 315.  The effect of the improper credibility
quantification testimony causes us to harbor substantial doubt
about the fairness of the proceeding.

Brooks had the "substantial right . . . to have the members
decide the ultimate issue . . . without the members viewing [the
victim's] credibility through the filter of" an expert's view of
the victim's credibility.  Id. at 319 (relating to human lie
detector testimony).  In this case, admitting the expert
testimony quantifying the victim's credibility was plain error.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed.  The findings and sentence are set aside.  The record is returned to the Judge Advocate General of the Air Force.  A rehearing may be ordered.