# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant SEAN W. CORNELISON**
**United States Army, Appellant**

ARMY 20160733

Headquarters, United States Army Alaska
Kenneth W. Shahan, Military Judge
Colonel Erik L. Christiansen, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Captain Natanyah Ganz, JA (on brief).

22 February 2019

---------------------------------
OPINION OF THE COURT
---------------------------------

FEBBO, Judge:

Appellant challenges the form and substance of a crime victim's unsworn statement during the presentencing phase of appellant's court-martial. We agree that some of appellant's arguments identify legal error. Ultimately, however, as appellant did not preserve these issues at trial, we conclude appellant is entitled to no relief under the plain error standard of review.[1]

A panel with enlisted representation sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of drunken operation of a vehicle, wrongful use of marijuana, rape, assault consummated by a battery, and possession of a firearm in a vehicle while impaired, in violation of

---

[1] We have considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit no relief.

Articles 111, 112a, 120, 128, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 911, 912a, 920, 928, and 934 [UCMJ]. The panel sentenced appellant to a dishonorable discharge, eighteen months of confinement, and reduction to the grade of E-1. The convening authority approved the findings and sentence as adjudged and credited appellant with 315 days toward his sentence to confinement. Appellant's case is now before us for review pursuant to Article 66, UCMJ.

## BACKGROUND

Appellant married SC in the summer of 2015. Their marriage was nasty, brutish, and short. They moved to Fairbanks, Alaska, in September 2015. In November 2015, appellant raped his wife. On New Year's Eve, appellant and his wife were drinking alcohol and got into an argument. Appellant repeatedly struck SC in the face with his hand and fist. SC suffered serious injuries to her head and face. Afterward, appellant drove away from their home. Based on his driving, appellant was stopped by local police for suspicion of driving under the influence of alcohol. The police searched his vehicle and found a loaded pistol.

After appellant was convicted of the offenses listed above, the government called SC as a witness during presentencing proceedings. The government did not call any other sentencing witnesses. The trial counsel explained to the military judge that SC would give an unsworn statement in question-and-answer format. The military judge instructed the panel that, as a victim of appellant's offenses, SC was allowed to give an unsworn statement and would not be subject to cross-examination. Without any objection from appellant's counsel, the military judge allowed SC to give an unsworn statement in a question-and-answer format, wherein the trial counsel asked SC questions and SC answered them.

SC's unsworn statement spanned eleven pages of transcript and included approximately fourteen questions by the trial counsel, some of them prefatory, and several long narrative answers by SC. Among other things, SC explained that her career was devastated by her relationship with appellant, her move to Alaska, and the injuries appellant inflicted on her. SC stated she had a stable job before moving to Alaska, but was unable to seek employment after returning to Georgia due to the injuries on her face, stress, and the short duration of her employment in Alaska. SC said she received no support from appellant after she left Alaska, suffered financial hardship, and had her vehicle repossessed. According to SC, this caused a decline in her credit score, made her unable to buy another car, and rendered her homeless. As a result, SC had to live in her daughter's small apartment, where she slept on a cot in the sunroom. According to SC, her family worried that she might hurt herself. She stated she was terrified that appellant would get released from confinement, show up at her daughter's house with a weapon, and hurt her and her family.

During appellant's presentencing case, he also gave an unsworn statement, which spanned twenty-two pages of transcript. Appellant's statement was also in a question-and-answer format wherein his defense counsel asked questions and appellant answered. The military judge instructed the panel that appellant was authorized to make an unsworn statement. Among other instructions, the military judge instructed the panel they could not draw any adverse inference from the fact that appellant elected to make a statement not under oath; each panel member could weigh appellant's unsworn statement based on their own discretion; the panel could consider that the statement was not under oath; and the panel could consider whether the unsworn statement was supported or contradicted by the evidence in the case. The military judge did not explicitly give a similar instruction concerning the weight and credibility for SC's unsworn statement.

## LAW AND DISCUSSION

Under the umbrella of a single assignment of error, appellant asserts multiple failings regarding SC's unsworn statement.[2] We will address appellant's assertions in the following order: First, appellant argues neither the parties nor the court were provided a copy of SC's unsworn statement prior to her delivering it. Even if this was true, we find it did not materially prejudice appellant. Second, appellant objects to the inclusion of the statement in the government's sentencing case. We agree the sequencing of the statement was technically wrong, but find appellant suffered no practical harm. Third, appellant argues it was error for the military judge to allow the statement in question-and-answer format led by the trial counsel. Appellant is correct, but we find the forfeited error did not materially prejudice him. Fourth, appellant contends the content of the statement addressed general financial and emotional effects of marrying appellant in addition to the impact of appellant's discrete offenses. We find no obvious error. Fifth and finally, appellant alleges the military judge prejudicially erred by not giving a complete instruction to the panel on the weight and credibility of SC's unsworn statement. We disagree for multiple reasons.

---

[2] The government argues appellant waived this issue because his defense counsel asked the military judge if SC would be making her unsworn statement from the witness stand and appellant did not object to SC's statement. Under the facts of this case, where appellant only asked where SC would be physically located as she gave her statement and he did not discuss the format of the statement before she gave it, we conclude appellant's failure to object to SC's unsworn statement was not waiver. Instead, it was forfeiture, and therefore only subject to review for plain error. *See United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007).

### A. *Failure to Provide the Unsworn Statement in Advance*

Appellant notes that a copy of SC's unsworn statement was not attached as an appellate exhibit, and nothing in the record shows it was provided in advance to the parties or the military judge as required under Rule for Courts-Martial (R.C.M.) 1001A(e)(1). Because provision of the unsworn statement to the parties was never discussed on the record, either appellant was provided a copy of the statement or he forfeited any claim of error by failing to object. *See Brooks*, 64 M.J. at 328.[3]

Forfeited error is subject to review under the plain error standard. In order to warrant relief for plain error, appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011). "[F]ailure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

Even assuming appellant was never provided a copy of SC's unsworn statement, he has failed to establish the third prong of plain error—he has not shown any material prejudice to his substantial rights. Appellant requested no additional time to marshal facts to rebut any of SC's unsworn statement, there is no indication appellant was surprised by the content of SC's unsworn statement, and appellant's defense counsel adeptly addressed the content of SC's statement during appellant's sentencing argument. Even assuming appellant was not given an advance copy of SC's unsworn statement, appellant has not shown the omission prejudiced him.

### B. *Sequencing of the Unsworn Statement*

Appellant argues SC's R.C.M. 1001A unsworn statement was improperly included as part of the government's R.C.M. 1001 presentencing case. Appellant also argues the court-martial itself—rather than the trial counsel—should have called SC to make her unsworn statement. As a formal matter, appellant is correct as to who "calls" a victim under R.C.M. 1001A. As a practical matter, appellant is incorrect as to whether the timing of SC's testimony in any way prejudiced him.

The ability of a crime victim to give an unsworn statement under R.C.M. 1001A is independent of the ability of the government and the defense to call that same victim to testify under R.C.M. 1001. *See* R.C.M. 1001A(a). Our superior court has explained, "R.C.M. 1001A is itself part of the presentencing procedure, and is temporally located between the trial and defense counsel's respective

---

[3] This underscores the need for timely objections. In the absence of an objection, it is appellant's burden to establish plain error.

presentencing cases.  It belongs to the victim, and is separate and distinct from the *government's* right to offer victim impact statements in *aggravation*, under R.C.M. 1001(b)(4)."  *United States v. Barker*, 77 M.J. 377, 378 (C.A.A.F. 2018) (emphasis original).

While the trial counsel has the obligation to ensure a crime victim is aware of his or her right to be heard, a victim who chooses to be so heard "shall be called by the court-martial."  R.C.M. 1001A(a).  Thus, appellant is correct that the court-martial—not the government or the defense—calls a crime victim who chooses to give a statement under R.C.M. 1001A.  As explained in subsection "C," below, a victim's statement may only be given by the victim, a victim's designee under R.C.M. 801(a)(6), or the victim's own counsel.

We find it hard, however, to fault the military judge for allowing SC to give her unsworn statement when he did.  Appellant's case was tried before our superior court issued its guidance in *Barker*.  In light of *Barker*, it is clear any R.C.M. 1001A statement should be offered between the close of the government's presentencing case and the beginning of the defense's presentencing case.  This conclusion is both fair and practical, but it was not clear from the text of R.C.M. 1001A alone.  Only with the benefit of our superior court's guidance is this rule clear.

The *Manual for Courts-Martial* gives the military judge the responsibility and deference to ensure court-martial procedures are conducted in a fair and orderly manner.  *See* R.C.M. 102; R.C.M. 801(a)(3) discussion (the military judge is empowered to "prescribe the manner and the order in which proceedings may take place").  The military judge "may exercise reasonable control over the proceedings to promote the purposes of these rules and this manual."  R.C.M. 801(a)(3).  The military judge also decides the order in which witnesses may testify.  R.C.M. 801(a)(3).[4]  In this case, without the benefit of our superior court's guidance in *Barker*, the military judge exercised his discretion to allow a fair and orderly presentation of presentencing matters and appellant had a full opportunity to present his own presentencing case.  As it happened, the only difference between the order of presentation directed by *Barker* and the order allowed by the military judge was the timing of when the government announced conclusion of its presentencing case.

While it was a technical error to allow the government to call SC and for her to give her unsworn statement during the government's presentencing case, we conclude the timing did not prejudice appellant.  While our superior court has

---

[4] Indeed, we believe a military judge would be within his or her discretion to allow a crime victim to be heard out of order upon a showing of good cause—such as logistical considerations or witness availability.

decided a crime victim's statement under R.C.M. 1001A, "is temporally located between the trial and defense counsel's respective presentencing cases," *Barker*, 77 M.J. at 378, the government did not offer any evidence after SC gave her unsworn statement. The practical difference between the government resting immediately before or immediately after SC's unsworn statement was negligible. Thus, appellant has failed to demonstrate any material prejudice to his substantial rights.

### *C. Who May Participate in a Victim's Unsworn Statement*

We conclude the military judge erred by allowing the trial counsel to participate in the victim's unsworn statement. R.C.M. 1001A does not contemplate either a trial counsel or defense counsel participating in a victim's unsworn statement through a question-and-answer exchange. Instead, R.C.M. 1001A plainly states that a victim, "may not be cross-examined by the trial or defense counsel" on his or her unsworn statement, nor may a victim be "examined upon it by the court-martial." R.C.M. 1001A(e).[5] As our superior court has explained, a crime victim's right to be heard under 1001A, "belongs to the victim, and is separate and distinct from the government's right to offer victim impact statements in aggravation." *Barker,* 77 M.J. at 378.

Under R.C.M. 1001A, only two persons other than a crime victim are allowed to give a victim's unsworn statement. A victim's designee under R.C.M. 801(a)(6) may give a victim's unsworn statement. R.C.M. 1001A(e). Similarly, a victim's counsel may give a victim's unsworn statement, but only upon "good cause shown." R.C.M. 1001A(e)(2). Thus, while we assess a military judge may allow a victim to give an unsworn statement in a question-and-answer format, we conclude R.C.M. 1001A(e)(2) requires the victim's own counsel—not the trial counsel, defense counsel, or the court-martial—be the individual who asks the victim such questions.[6]

We find the military judge erred by failing to enforce R.C.M. 1001A as it is written when he allowed the trial counsel to participate in SC's unsworn statement.

---

[5] What the government did in this case was more akin to a direct-examination than a cross-examination, but that would suggest SC was called as the government's witness. To be clear, during a victim's statement under R.C.M. 1001A, the victim is not a witness for either the government or the defense. If the government or defense want to call a victim as a sentencing witness, they must do so under R.C.M. 1001, as they would for any other witness.

[6] We leave for another case the question of whether a victim's designee under R.C.M. 801(a)(6) could lead a victim under eighteen years of age through a question-and-answer unsworn statement. *See* R.C.M. 1001A(e).

Appellant, however, has not demonstrated any material prejudice to his substantial rights as a result. The trial counsel only asked SC approximately fourteen questions, several of which were prefatory. SC's answers to the trial counsel's questions were lengthy and consistent with a narrative-form unsworn statement rather than a carefully-directed presentation by the trial counsel. There is no reason to believe SC would have given either a less compelling or more compelling unsworn statement had she read a previously-prepared statement, been asked questions by a special victim's counsel, or narrated her unsworn statement on her own. During his sentencing argument, appellant's counsel made effective points rebutting portions of SC's unsworn statement and, as discussed in the conclusion of this opinion, the overall sentence appellant received was lenient.

### D. The Content of the Unsworn Statement

Appellant contends that portions of SC's unsworn statement exceeded the permissible scope of "victim impact" to such an extent it was plain and obvious error for the military judge to allow them. We disagree. A victim's unsworn statement may include statements of victim impact, or matters in mitigation, or both. R.C.M. 1001A(c). SC's unsworn statement was clearly intended to convey statements of victim impact. Victim impact is defined to include, "financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense[s] of which the accused has been found guilty." R.C.M. 1001A(b)(2). In her unsworn statement, SC attributed a litany of negative consequences to appellant's crimes, and expressed fear that he would one day harm her again. As appellant did not object, we find no obvious error in the content of SC's unsworn statement. We are mindful that, because appellant never objected, SC was never afforded the opportunity to explain why she attributed some hardships to appellant's crimes against her. As such, we simply do not find any of SC's statements were so plainly unrelated to appellant's conduct as to constitute obvious error.

While we find no obvious error, we also find that even if some of SC's statements had constituted error, no such error materially prejudiced appellant's substantial rights. In appellant's sentencing argument, his defense counsel effectively argued that SC's unsworn statement demonstrated that she was articulate, capable, and fully able to lead a happy and productive life in the future. Defense counsel also observed SC would, thankfully, receive transitional compensation from the Army for three years. Taken as a whole, appellant suffered no material prejudice from any alleged overreach in SC's unsworn statement.

### E. Instructing the Panel on a Victim's Unsworn Statement

The military judge did not give the panel the now-standard instruction on a victim's unsworn statement found in the latest update to the Military Judge's Benchbook. Appellant neither objected to this omission, nor did he otherwise

request such an instruction. We therefore review the military judge's instructions for plain error. We find none.

We find no plain error in the military judge's instructions regarding SC's unsworn statement for five related reasons. First, the Military Judge's Benchbook is not a source of law. Second, even if it were a source of law, the instruction appellant invokes on appeal was not approved until after appellant's court-martial. Third, the instruction is not mandatory. Fourth, the military judge gave no incorrect instructions. Fifth, and finally, appellant was not materially prejudiced by the omission of the instruction.

The Benchbook is not a source of law, but represents a snapshot of the prevailing understanding of the law, among the trial judiciary, as it relates to trial procedure. *See United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013) ("the Benchbook is not binding as it is not a primary source of law, the Benchbook is intended to ensure compliance with existing law"). *See generally*, Dep't of Army Pam. 27-9, Legal Services: Military Judges' Benchbook (10 Sep. 2014), Foreword.

The current version of the Benchbook was officially published on 10 September 2014. Due to the dynamic nature of the law, the Benchbook undergoes periodic changes by the U.S. Army Trial Judiciary. *See* U.S. Army Trial Judiciary, *DA Pam 27-9 and Approved Interim Updates* (9 Apr. 2013).[7] Approved Change 16-06 modified the standard instructions on unsworn statements to account for the ability of a crime victim to make an unsworn statement under R.C.M. 1001A(e). U.S. Army Trial Judiciary, *Instruction on Victim's Unsworn Statement* (14 Nov. 2017).[8] The effective date of Approved Change 16-06 was 14 November 2017. U.S. Army Trial Judiciary, *Approved Interim Change List with Effective Dates* (1 Feb. 2019).[9] As such, the current instruction on a crime victim's unsworn statement was approved four days *after* appellant's court-martial adjourned on 10 November 2017.

---

[7]https://www.jagcnet.army.mil/sites/trialjudiciary.nsf/homeContent.xsp?open&documentId=DE67163596F12C3F85257B48006915EA.

[8]https://www.jagcnet.army.mil/sites/trialjudiciary.nsf/xsp/.ibmmodres/domino/OpenAttachment/Sites/trialjudiciary.nsf/DE67163596F12C3F85257B48006915EA/Attachments/Approved%20Change%2016-06%20(Instruction%20on%20Victim's%20Unsworn%20Statement).docx.

[9]https://www.jagcnet.army.mil/sites/trialjudiciary.nsf/xsp/.ibmmodres/domino/OpenAttachment/Sites/trialjudiciary.nsf/DE67163596F12C3F85257B48006915EA/Attachments/Approved%20Interim%20Change%20List%20with%20%20Effective%20Dates%20(as%20of%201%20Feb%2019).docx.

Even if the current instruction on a victim's unsworn statement were approved prior to appellant's court-martial, its omission would not necessarily constitute legal error. The instruction on a victim's unsworn statement is not one of the mandatory presentencing instructions under R.C.M. 1005(e). *See also United States v. Miller*, 58 M.J. 266 (C.A.A.F. 2003). Although military judges are usually well-advised to follow the standard instructions in the Benchbook, the Benchbook is not a source of law and mere deviation from the Benchbook does not necessarily constitute legal error. We find no error in the military judge's instructions in appellant's case.

Nothing in the military judge's instructions to the panel was inaccurate or a misstatement of the law. When the military judge instructed the panel immediately before SC's statement, he did not elaborate on how the panel could weigh the matters presented in an unsworn statement. During presentencing instructions, however, the military judge instructed the panel, "[t]he weight and significance to be attached to *an* unsworn statement rests within the sound discretion of each court member." (emphasis added). While the military judge did not remind the panel during presentencing instructions that SC made an unsworn statement, we have no reason to believe the panel was incapable of applying the military judge's instruction on consideration of "an unsworn statement" to SC's unsworn statement as well as appellant's.

We find no error in the instructions as given. Even if the instructions had been in error, however, we would again find no material prejudice to appellant. As discussed in our conclusion below, appellant's defense counsel effectively countered SC's unsworn statement through astute argument and appellant received a lenient sentence considering the nature of his crimes.

## CONCLUSION

We have considered whether the aggregate effect of the five alleged errors prejudiced appellant. It did not. Appellant's defense counsel did not indicate any surprise or disadvantage based on the form or substance of SC's unsworn statement. Rather, appellant's defense counsel adeptly addressed SC's unsworn statement during closing argument. Appellant was convicted of several serious crimes, including beating and raping his wife. Appellant faced a potential sentence including confinement for life without the possibility of parole. The government argued for a sentence including thirty years of confinement. Instead, the panel limited appellant's sentence to confinement to only eighteen months. No error of the military judge with respect to SC's unsworn statement, whether considered individually or in the aggregate, materially prejudiced appellant's substantial rights.

The findings of guilty and sentence are AFFIRMED.

9

CORNELISON—ARMY 20160733

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10