# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32651 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Rasheem M. BEAVERS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 14 May 2021

———————————

*Military Judge:* Sterling C. Pendleton; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 26 February 2020 by SpCM convened at Tinker Air Force Base, Oklahoma. Sentence entered by military judge on 23 April 2020 and reentered on 18 February 2021: Bad-conduct discharge, confinement for 4 months, forfeiture of $1,100.00 pay per month for 4 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Alex B. Coberly, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Judge KEY delivered the opinion of the court, in which Senior Judge MINK and Judge ANNEXSTAD joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

KEY, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge with four specifications of wrongfully using controlled substances over a 20-month period in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for four months, forfeiture of $1,100.00 pay per month for four months, reduction to the grade of E-1, and a reprimand.[3] The convening authority approved the sentence as adjudged.

On appeal, Appellant raises four issues, the first of which asserts an error in the post-trial processing of Appellant's court-martial: that the convening authority failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)). In an earlier opinion, this court agreed with Appellant and remanded his case to the Chief Trial Judge, Air Force Trial Judiciary, for corrective action. *See United States v. Beavers*, No. ACM S32651, 2021 CCA LEXIS 20, at *7–8 (A.F. Ct. Crim. App. 22 Jan. 2021) (unpub. op.). This error has been corrected, and we now turn to Appellant's three remaining issues: (1) whether trial counsel made improper comments during his sentencing argument; (2) whether the military judge erred by admitting Appellant's entire personnel information file into evidence; and (3) whether Appellant's sentence was inappropriately severe. Appellant personally raises the second and third issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Upon further review, we find no error prejudicial to the substantial rights of Appellant, and we affirm the findings and sentence.

---

[1] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) are to *Manual for Courts-Martial, United States* (2019 ed.).

[2] In accordance with the terms of the plea agreement, one charge with four specifications of solicitation to commit various drug-related offenses was withdrawn and dismissed.

[3] By virtue of being charged with offenses committed both before and after 1 January 2019, Appellant had the option—which he exercised—to be sentenced under the sentencing rules in effect on 1 January 2019 pursuant to R.C.M. 902A, *Manual for Courts-Martial, United States* (2019 ed.). The military judge sentenced Appellant to two terms of confinement of four months and two terms of three months, all of which would run concurrently. *See* R.C.M. 1002(d)(2)(B).

## I. BACKGROUND

Appellant enlisted in the Air Force in April 2016. In early 2018, he began recreationally using a variety of controlled substances. Eventually, Appellant's drug use came to the attention of law enforcement, and he was called in for an interview with Air Force Office of Special Investigations (AFOSI) agents in August 2019. Appellant confessed to using drugs, and charges were preferred against him four months later. At his court-martial, Appellant and the Government stipulated that Appellant had used cocaine at least five times, lysergic acid diethylamide (LSD) at least six times, mushrooms containing psilocybin at least four times, and "Methylenedioxymethamphetamine"[4] (MDMA, or "Ecstasy") twice. On several of these occasions, Appellant used LSD and psilocybin with another Airman assigned to a different unit, Airman First Class RT, who procured the drugs. The remainder of Appellant's uses occurred when he was either alone or with civilian friends.

## II. DISCUSSION

### A. Government Sentencing Argument

Appellant argues trial counsel improperly employed Appellant's status as a trainer in his unit as a matter in aggravation in an effort to obtain a greater sentence from the military judge. We disagree.

### 1. Additional Background

The Government called a single witness in its sentencing case, Major (Maj) DD—Appellant's squadron commander who took command after Appellant had come under investigation for his drug abuse. Maj DD explained Appellant was a computer technician at the time of his offenses who "spent a great deal of time as a trainer within the computer flight," helping train new and inexperienced members of the squadron. He testified Appellant's responsibilities were "predominantly upgrade training of younger individuals" and providing

---

[4] The correct name for this drug is 3,4-methylenedioxymethamphetamine. *See* Schedules of Controlled Substances, 21 U.S.C. § 812. Prior to referring charges in this case, the special court-martial convening authority directed a preliminary hearing, and the preliminary hearing officer recommended the drug's name be corrected, but that recommendation was apparently never acted upon. Appellant has not asserted he was misled by the specification and we perceive no prejudice arising from this error, especially in light of the fact the military judge used the correct name for the drug during Appellant's providence inquiry. *See, e.g.*, *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (explaining that the military is a "notice pleading jurisdiction").

hands-on instruction to supplement what they had learned during their technical training. Maj DD estimated there were "probably upwards of 30 or so" Airmen going through upgrade training on any given day.

Trial counsel posed the following question to Maj DD: "I now would like to ask you about the specifics of the impact that [Appellant's] actions had on the unit. Earlier you mentioned that he was training individuals as part of his job. What did [Appellant's] drug use change for the individuals that he was training?" Maj DD started his answer by saying military members in a training environment would, in general, develop a relationship with their trainers. He then said, "With the events that [Appellant] and his actions the behavior with the revocation of his access to classified, it essential [sic] separated that ability for those individuals to continue their training in the same manner in which it had occurred previously." He followed that comment by saying, "There were certainly other trainers around and available however there is a direct impact if you will on their ability to not reset from a training perspective, maybe start all over as they are working through kind of the nuance of a new trainer." Maj DD then explained that due to Appellant's classified access being revoked, Appellant was limited in terms of what duties he could perform in the unit, and he had to be escorted through certain restricted areas. During cross-examination, Maj DD said he had not heard anything negative about Appellant's duty performance or "behavior wise" since taking command.

In his sentencing argument, while telling the military judge why a bad-conduct discharge was warranted, trial counsel said,

> [Maj DD] testified about the fact that [Appellant] was responsible for training other [A]irmen and the impact this had on those trainees. They had to develop a new relationship with a new trainer, but also how are we going to trust a trainer who is using drugs on an average of once a month to train other [A]irmen and the effects that has on the 40 or so [A]irmen that he may have been training?

Trial counsel did not make any further comment about Maj DD's testimony or Appellant's training duties. There was no objection from the Defense during either Maj DD's testimony or trial counsel's sentencing argument.

In the Defense's sentencing argument, trial defense counsel argued Appellant was the kind of person who "helps others," and referenced the fact that he "trains other [A]irmen." She later revisited Appellant's trainer duties, noting he was in that position because he was "so technically proficient" and "one of the better [A]irmen" who "was entrusted with training the other [A]irman [sic]." She then told the military judge that when Appellant was removed from

his training duties, "it created a vacuum," all of which she said demonstrated Appellant was a "good [A]irman."

### 2. Law

We review claims of improper argument de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). In the absence of objection at trial, we review trial counsel's argument for plain error, placing the burden of proof upon the Appellant. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citations omitted). In order to prevail on a plain-error review, Appellant must demonstrate "(1) error, (2) that is clear or obvious, and (3) results in material prejudice to a substantial right." *United States v. Bodoh*, 78 M.J. 231, 236 (C.A.A.F. 2019) (citation omitted). When error occurs in a sentencing argument, material prejudice is only established when Appellant shows there is "a reasonable probability that there would have been a different outcome to the sentencing proceeding had this improper argument not occurred." *United States v. Norwood*, ___ M.J. ___, No. 20-0006, 2021 CAAF LEXIS 204, at *19 (C.A.A.F. 24 Feb. 2021) (citation omitted).

During presentencing proceedings, trial counsel are permitted to "present evidence as to any aggravating circumstances directly relating to or resulting from" the accused's offense. Rule for Courts-Martial (R.C.M.) 1001(b)(4). Such evidence includes "significant adverse impact on the mission, discipline, or efficiency of the command." *Id.* Trial counsel may further argue "fair inferences as may be drawn" from such evidence. *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993) (citations omitted).

In the absence of any evidence connecting an accused's offenses to his or her duty position or any evidence supporting an inference of mission impact resulting from those offenses, it is error to consider the accused's duty position as a matter in aggravation. *See United States v. Bobby*, 61 M.J. 750, 756 (A.F. Ct. Crim. App. 2005). We have described this proposition as "tantamount to black letter law" and that doing so "is simply not allowed unless there is some connection between an accused's duty position and the commission of the crime." *United States v. Rhodes*, 64 M.J. 630, 632 (A.F. Ct. Crim. App. 2007), *aff'd*, 65 M.J. 310 (C.A.A.F. 2007).[5]

---

[5] *See also United States v. Collins*, 3 M.J. 518, 521 (A.F.C.M.R. 1977) (finding trial counsel's argument about the accused's position of trust to be error where "[t]here was simply nothing before the court members to suggest that the fact the accused was assigned to the security police organization was in any manner connected with" him selling controlled substances).

### 3. Analysis

Maj DD's testimony regarding Appellant's training duties was less than clear, but we interpret his comments as essentially saying Appellant could no longer perform his training duties due to his security clearance being revoked. As a result, the trainees who had been under Appellant's tutelage had to receive training from other unit members, and those trainees might not have the same relationship with the new trainers that they had with Appellant which, in turn, possibly meant that some trainees might have had to effectively start their training anew. Thus, trial counsel did admit some evidence of a connection—albeit somewhat attenuated—between Appellant's duties as a trainer and his offenses.

In his argument, trial counsel characterized Maj DD's testimony as trainees needing "to develop a new relationship with a new trainer" and then rhetorically asked "how are we going to trust a trainer who is using drugs[?]" Taken in context, the Government established that, by virtue of his offenses, Appellant could no longer perform his training duties, and this had the impact on his unit of some Airmen needing to acquaint themselves with different trainers. This impact was a valid matter in aggravation which trial counsel was free to argue to the military judge, as well as any reasonable inferences to be drawn therefrom. Trial counsel's fleeting comment about being able to trust a trainer who uses drugs is more concerning, but only marginally so. This comment came during the portion of trial counsel's argument in which he was advocating Appellant receive a bad-conduct discharge, but precisely what trial counsel intended to convey by the comment is difficult to discern. The comment was ambiguous, but we interpret it as elaborating on the fact Appellant's leadership removed him from training duties; that is, that they were unable to trust him to continue training other Airmen based upon his offenses. Theoretically, trial counsel could have been suggesting Appellant should be separated from the Air Force with a punitive discharge because "we" cannot trust him, but trial counsel never said as much, and we will not strain to read such a message into his comments.

The fact Appellant could no longer perform an aspect of his duties as a result of his offenses was a matter in aggravation properly admitted in evidence. Trial defense counsel did not object and even sought to capitalize on the matter by pointing to the "vacuum" left in the unit when Appellant was removed from his training role. Under the facts presented here, we do not find plain error. Moreover, the unit impact here was nominal and Appellant has not shown any probability this judge-alone court-martial would have had a different outcome had the comment not been made. *See Norwood*, 2021 CAAF LEXIS 204, at *19. Absent evidence to the contrary, we presume military judges correctly identify

which portions of a counsel's argument are improper and give them appropriate weight. *See, e.g.*, *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). Based on the foregoing, we decline to grant Appellant relief.

**B. Appellant's Personnel File**

During the sentencing phase of Appellant's court-martial, the Government offered Appellant's 36-page Personnel Information File (PIF) into evidence. The file included a variety of documents we are unaccustomed to seeing in evidence in drug-abuse courts-martial, such as fitness-testing records, notifications about small outstanding debts on a personal credit card, and a traffic ticket. After the Government offered the file, trial defense counsel told the military judge, "No objection, Your Honor." The military judge then said, "so just so I am clear . . . this is the entire PIF[?]" Trial counsel answered affirmatively, and the military judge admitted the file.

In addition to the PIF, trial counsel offered a three-hour-long recording of Appellant's AFOSI interview and a 59-page AFOSI report of investigation into evidence. Receiving no objection from the Defense, the military judge admitted both. Before he began deliberating on Appellant's sentence, the military judge asked trial counsel if there were specific portions of the Government's evidence he should focus on. Trial counsel identified particular segments of the interview and 16 pages in the report of investigation. The military judge then explained he would consider all the evidence which had been admitted, and he asked trial defense counsel whether she had any questions. She replied, "No, Your Honor, and I have nothing to add to that."

Trial counsel then told the military judge there were some documents in the PIF, such as legal reviews pertaining to items in the PIF, which were not "necessary for consideration." This led the military judge to comment that he would be willing to permit trial counsel to withdraw parts of the exhibit, but then he reversed course and told the parties he would consider the entire PIF because it was in evidence. After a short discussion, the military judge again turned to trial defense counsel who said, "I have nothing to add to that sir." When the military judge reconvened the court to announce his sentence, he told the parties he had given "minimal weight" to a number of the documents in the PIF, such as the traffic ticket.

On appeal, Appellant argues the PIF was admitted in error, and that we should grant him "meaningful sentence relief." Appellant, however, has waived this issue. By not objecting to the admission of the PIF at trial, any error in such admission is forfeited in the absence of plain error. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citing *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007)) (additional citations omitted). However, under the

ordinary rules of waiver, when an appellant affirmatively states he has no objection to the admission of evidence, the issue is waived and his right to complain about its admission on appeal is extinguished. *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009)). Here, trial defense counsel stated she had "[n]o objection" to the PIF's admission. Moreover, she told the military judge she had nothing to add to the discussion about which portions of the Government's evidence he should focus on, and she took the same position after the military judge raised the idea of allowing trial counsel to withdraw portions of the exhibit that trial counsel suggested were unnecessarily included. Thus, trial defense counsel did not merely fail to object at trial, she affirmatively waived the matter by stating she had no objection.

Pursuant to Article 66(d), UCMJ, we have the unique statutory responsibility to affirm only such findings of guilty and so much of the sentence that is correct and "should be approved." 10 U.S.C. § 866(d). Thus, we retain the authority to address errors raised for the first time on appeal despite waiver of those errors at trial. *See, e.g.*, *United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018). Having carefully considered Appellant's alleged error, we have determined we will leave his waiver intact.

## C. Sentence Severity

Appellant contends that his sentence is inappropriately severe in the face of his cooperation with the Government in cases against other Air Force drug abusers, as well as his difficult childhood and setbacks he suffered as an adult. Based upon his written unsworn statement admitted during his court-martial, Appellant said he was a foster child who had been removed from his birth parents' care and separated from his siblings at an early age. He struggled to find a sense of belonging, even after he was eventually adopted by a military family, and those feelings persisted after he enlisted. Appellant wrote that as a young Airman, he became so focused on his professional academic development that he neglected his physical fitness which led to failing his fitness tests. He said these failures—and the administrative actions he received as a result—caused him stress which he sought to alleviate by abusing controlled substances. When confronted by AFOSI agents, Appellant confessed, and he later assisted the agents as a confidential informant in several investigations. Appellant points to the fact that—aside from his drug use—he was a hard-working Airman. He asks us to set aside his bad-conduct discharge based upon "his compelling personal story."

Trial counsel asked the military judge to sentence Appellant to six months of confinement and a bad-conduct discharge, while trial defense counsel recommended two months of confinement and no punitive discharge. Since Appellant had elected to be sentenced under the procedures outlined in the 2019

*Manual for Courts-Martial*, the military judge was aware that, under the terms of Appellant's plea agreement, he could sentence Appellant to no more than six months of confinement. Ultimately, the military judge sentenced him to four months of confinement and a bad-conduct discharge along with forfeitures of pay, reduction in grade, and a reprimand.

We review sentence appropriateness de novo by "considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (citation omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Appellant's request is essentially one of clemency, which we have no authority to give. We do not minimize the challenges Appellant faced growing up or the fact he assisted government investigators in other cases, but Appellant was convicted of recreationally using multiple different drugs over a lengthy period of time with another servicemember as well as civilians in the local community. We also note Appellant was sentenced to less time in confinement than authorized by the plea agreement he entered into with the convening authority. Based upon the foregoing and our review of the record of trial, we conclude Appellant's sentence is not inappropriately severe, and we decline his invitation to grant relief.

## III. Conclusion

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court