**Wyatt POWELL, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Jan. 27, 1987.
Decided: June 11, 1987.

Nancy J. Mullen, Asst. Public Defender, Office of the Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice.

This is a companion case to *Wheat v. State*, Del.Supr., 527 A.2d 269, which addressed the use of expert testimony in child molestation cases. The appellant, Wyatt Powell, was convicted after a jury trial of first degree rape of his stepdaughter. Based on our reasoning in *Wheat*, we reverse.

I

The State's evidence consisted of the direct testimony of the complainant, ten years old at the time of trial, and various corroborative witnesses including a school nurse, a physician, the complainant's older brother, a police officer, and a social worker. Although the alleged attack occurred in March of 1984, the complainant first reported it over a year later when she was questioned by a school nurse in a Maryland school she was attending. The nurse had noticed that the child seemed sad and depressed. When asked the reason for her sadness, the child stated that her stepfather, the appellant, had, on an unspecified date, forced her into his bedroom, took off both his clothes and her clothes, and "got on top of her."

At trial, the child claimed the alleged rape had occurred in 1984 on her birthday, i.e. March 2. On that date she was living in Wilmington with her mother, stepfather, and a brother and sister. She stated that on that date, after her mother had left for work, appellant told her to go into his bedroom, threw her on the bed, took off both his clothes and her clothes, kissed her on the lips, got on top of her, put his "private part" into her "private part," and started "humping up and down." She testified that after the alleged rape, the appellant threatened her with a knife, saying that if she told anyone he would kill her. She admitted that until she spoke with the school nurse, she told no one about the alleged rape except her brother, whom she asked not to tell anyone.

Medical evidence introduced at trial established that the complainant's hymen had been partially ruptured, a condition consistent with the entry into her vagina of an adult male penis, but not exclusive of other causes for the rupture.

The remainder of the State's evidence was testimony directed to corroborating details of the complainant's testimony and fortifying, directly and indirectly, her credibility. Her brother testified that on a 1984 morning near her birthday, he heard her screaming from their parents' bedroom. He added that he tried to enter that room but could not because the door was locked. He corroborated her testimony that at that time the shades of that room were drawn and its lights on. He added that the complainant was crying when she came out of that room, and told him, that same day, that "daddy been messing with her," but asked him not to tell anyone. On cross-examination, he stated that around October, 1985, the complainant spoke to him about Joseph Nixon, her cousin, "messing with her."

The State also produced Sally Cantor, coordinator of Home Based Services at the Childrens' Bureau of Delaware. The Superior Court initially ruled that if Cantor were qualified as an expert, her testimony would be admissible as "expert testimony on factors which are symptomatic of intrafamily abuse, particularly relating to late reporting."[1] It further ruled that she could testify as to literature in that area, her observations of the complainant, and her conclusions reached on the basis of

---

1. Before the jury, Cantor testified that she held a Master's degree in social work, had "extensive post-Master's training in sexual abuse training," and had attended a number of training sessions and seminars on the subject of intrafamily sexual abuse. Defense counsel made no objection based on lack of qualifications.

documents concerning the complainant in this case. The court issued a caveat against venturing "into the troublesome areas," such as statistical probabilities on one family member's propensity to commit sexual abuse.

On *voir dire* of Cantor, conducted before the jury, appellant's counsel asked whether she had investigated any allegations of child abuse later established as false. After an objection by the prosecutor and subsequent argument, the court ruled that defense counsel would be permitted to ask that question and the prosecutor would be permitted to ask the converse, i.e. the percentage of such allegations later established as true.

Still on *voir dire* before the jury, after clarifying that her function was treatment, not investigation, Cantor testified that she had been involved in the treatment of approximately one hundred victims, but only one case where such allegations were later established as false, and that in that case the child had been previously abused. On direct examination, she testified that ninety-nine percent of the alleged victims involved in sexual abuse treatment programs in which she was also involved "have told the truth."

Cantor subsequently described, from her own experience and her reading of relevant literature, characteristics common in sexual abuse victims. She stated that such abuse tends to have a "profound effect" on children, and that common effects are mood swings, nightmares, eating disorders, sleeping disorders, dysfunction in school programs, changes in behavior, withdrawal, depression, guilt, and a sense of loss. She stated that immediate reporting of intrafamily sexual abuse is "very uncommon."

Cantor had never interviewed the complainant in this case. Nonetheless, she stated conclusions based on a review of statements made by the child and other family members, including the defendant, to police agencies. She concluded that the complainant here displayed numerous characteristics common in intrafamily sexual abuse victims, namely fright, depression, withdrawal, and physical injury. Emphasizing this point, she added "it is clear to me that she is reacting in the way that victims we have seen in treatment react."

Appellant categorically denied any sexual involvement with his stepdaughter and denied threatening her. He also sought to establish that if she had been raped, it was more probably by Joseph Nixon, not him.

## II

Appellant's attack on the State's use of Cantor's testimony is broad-ranged. First, as the appellant did in *Wheat*, he contends that knowledge of behavior relating to intrafamily sexual abuse has not developed sufficiently to provide a reliable basis for expert testimony concerning such behavior. He also argues that to the extent the expert was permitted to testify to consistency between the complainant's behavior and behavior indicative of what, in *Wheat*, we termed the "child sexual abuse syndrome," the expert was evaluating the complainant's credibility—a function uniquely reserved to the finder of fact. Appellant further contends that the use of such testimony in this case was particularly egregious and unduly prejudicial because it was presented without notice to the defendant and received by the jury without benefit of a limiting instruction. As in *Wheat*, the State counters that the expert testimony was admissible under the broad standard imparted by section 702 of the Delaware Rules of Evidence [2] and that to the extent it concerned the truthfulness of child abuse victims, it was admissible because elicited by defense counsel at trial.

In *Wheat* we delineated the parameters of admissibility of expert testimony regarding the psychological dynamics

---

**2.** D.R.E. 702 provides:

> **RULE 702. TESTIMONY BY EXPERTS.**
>
> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

and behaviorial patterns of complainants in child sexual abuse prosecutions. This case involves delayed reporting of alleged child sexual abuse, a behavior characteristic upon which a qualified expert may, under proper conditions, provide limited assistance to the trier of fact.[3] *Wheat*, at 273–74. In this case, however, the trial judge's admission of Cantor's testimony was clearly outside the parameters of *Wheat* in several respects. Since the admission of Cantor's percentage testimony constituted plain error, we must reverse the appellant's conviction.

In *Wheat* we stated, as a condition of admissibility, "The expert may not directly or indirectly express opinions concerning a particular witness' veracity or attempt to quantify the probability of truth or falsity of either the initial allegations of abuse or subsequent statements." *Id.* at 275. Cantor's percentage testimony clearly exceeded this limitation.

▮ Although the admission of this testimony was erroneous, we are confronted with the fact that defense counsel at trial, far from objecting to its admission, elicited it, in a *voir dire* of Cantor, over the prosecutor's objection. Such invited error may be the basis for reversal only if "plain," i.e. so prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. *Wainwright v. State*, Del. Supr., 504 A.2d 1096, 1100 (1986). The error must be material, apparent on the face of the record, fundamental in its character, and must clearly deprive an accused of a substantial right or show manifest injustice. *Id.*

Here, the verdict almost necessarily turned on the credibility of the appellant vis-a-vis his stepdaughter. *See, e.g., United States v. Binder*, 9th Cir., 769 F.2d 595, 602 (1985). No direct evidence established that a rape occurred, or if one did, that appellant committed it. The obvious purpose of Cantor's testimony was to bolster the complainant's credibility vis-a-vis the defendant's denial.

Cantor's percentage testimony was undoubtedly a "substantial evidentiary factor" in the prosecution's case. *Compare Fields v. United States*, D.C.App., 396 A.2d 522, 525 (1978). She was the sole expert witness on behavioral matters called by the prosecution. The prosecutor emphasized the significance of her syndrome evaluation in both his opening and rebuttal summations, stating "Maybe a kid would lie about how chocolate got on her dress, but an expert, uncontradicted by the defense ... said in 99 percent of the cases, kids are telling you the truth when they tell you about intrafamily sexual abuse." While deliberating, the jury requested Cantor's exact wording on this point, suggesting that it too focused directly on her percentage testimony.[4] *See Binder*, 769 F.2d at 602. The trial judge was unable to accommodate the jury's request and advised them to rely on their recall of the testimony. However, the significance of the expert's "percentage" testimony in this case is obvious.

The admission of Cantor's percentage testimony deprived Powell of his right to have his fate determined by a jury making the credibility determinations, so clearly crucial in these cases, without guidance

---

3. We are not without reservations concerning the admissibility of such testimony in this type of case. The complainant's testimony that Powell threatened to kill her if she reported the alleged rape presented an explanation for her delayed reporting that is both ostensibly viable and readily understandable to average lay finders of fact. However, because the psychological dynamics underlying the testimony of young children in sexual abuse cases is not easily compartmentalized, we are not prepared to hold that in this case, the factors explaining the delayed reporting were entirely of that variety, thus obviating the need for, and helpfulness of, expert testimony concerning such factors.

4. The jury's request appears in the following statement by the Trial Judge.

THE COURT: Members of the jury, I have a question, or two questions, really, from your forelady, which reads as follows:

Is it possible to have part of the testimony read back to the jury? And then it goes on to indicate, victim's testimony at end of Thursday and expert witness testimony about percent of child sexual abuse victims who are telling the truth.

from an expert, in stark mathematical terms, bolstering the credibility of the complainant and thereby impugning his credibility. We are sensitive to the fact that Cantor's testimony was elicited by defense counsel, not the prosecution. However, the admission of this testimony clearly deprived Powell of a substantial right and jeopardized the fairness and integrity of his trial. *Wainwright*, 504 A.2d at 1100. Accordingly, it was plain error, and we must reverse Powell's conviction.

### III

The problems attendant upon the use of the expert testimony in this case, which result in the reversal of Powell's conviction, were much exacerbated by particular developments in this case. Accordingly, we take this opportunity to emphasize limits articulated in *Wheat* concerning the admission of this type of testimony.

 Defense counsel's groping *voir dire*, conducted before the jury, which resulted in admission of the controversial mathematical evaluation of the victim's veracity, might have been eliminated by pretrial disclosure of the prosecution's intent to call Cantor as a witness, and *in limine* rulings by the Court. Reasonable notice of the identity of such experts may be essential to the preparation of a defense relative to their testimony. Because the State did not afford such reasonable notice here, we emphasize our holding in *Wheat* that in the future, when the State intends to call an expert witness to testify to characteristics common in child sexual abuse victims, the

State must afford the defendant adequate pretrial notice of its intent to call such an expert. *See also Allison v. State*, Ga. Supr., 256 Ga. 851, 353 S.E.2d 805, 808 (1987). We recognize that no specific statute or Superior Court rule yet exists in this evolving area of the law. However, that is not justification for us unfairly to deny defendants the opportunity adequately to prepare for or challenge such expert testimony. *See Fensterer v. State*, Del.Supr., 509 A.2d 1106, 1110 (1986).

The Superior Court did not instruct the jury concerning the limited purposes for which Cantor's testimony was admitted, as *Wheat* mandates, or give any instruction concerning expert testimony.[5]

 Just as the credibility determinations so crucial in child molestation prosecutions should not be based on inadmissible expert statistical testimony, and should be based on a trial process that affords both sides adequate cross-examination, so too should they be based on proper limiting instructions in conformity with that set forth in *Wheat*, at 276, n. 7.

In view of our conclusion that plain error occurred at trial, Powell's conviction must be REVERSED.

---

5. The trial judge gave an instruction to the jury concerning general credibility of witnesses in accordance with Form 3G of the Delaware Criminal Code Pattern Jury Instructions. However, the general nature of that instruction hard-ly fulfills the need for particularized instruction regarding the significance of expert testimony.