Brian **WATERMAN**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 562, 2007.

Supreme Court of Delaware.

Submitted: June 18, 2008.

Decided: Aug. 22, 2008.

---

**1262**

Nicole M. Walker, Esquire, Office of Public Defender, Wilmington, DE, for Appellant.

John Williams, Esquire, Department of Justice, Dover, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider, among other things, whether the Superior Court abused its discretion by allowing a child victim's videotaped statement into the jury room during deliberations. The trial court did so in an effort to balance the information given to the jury. During defendant's interrogation by the police, the interrogating officer described the victim's account of events, and repeatedly told defendant that he believed the victim. After the interrogation tape was played for the jury, the trial court *sua sponte* instructed the jury to disregard the officer's comments. In addition, in order to give the jury an opportunity to review what the victim actually said, as opposed to the officer's description of what she said, the court decided to allow the victim's statement to go into the jury room. We conclude that the trial court's concerns did not warrant departure from the "default" rule announced in *Flonnory v. State.*[1] Nonetheless, we are satisfied that the trial court's error was harmless beyond a reasonable doubt. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Brian Waterman lived at his step-grandmother's farm. Amy Taylor[2] and her siblings regularly visited relatives at the farm, and Amy knew Waterman as "Uncle Brian." Beginning when she was eight years old, Amy was sexually abused by Waterman. She did not tell anyone until more than a year later. When Amy's mother learned of the assaults, she suggested that Amy keep a journal and write about things that made her sad. Amy brought four pages from that journal to an interview with Diane Klecan, of the Chil-

---

1. 893 A.2d 507 (Del.2006).

2. The victim's name is a pseudonym selected by the Court pursuant to Supr.Ct. R. 7(d).

dren's Advocacy Center ("CAC"). Klecan videotaped the interview, during which Amy described Waterman's assaults. Amy agreed to let Klecan keep the journal pages, which also described the incidents. After the interview, Klecan turned the journal pages and the videotape over to the police.

Detective Mark G. Ryde, of the Delaware State Police, interrogated Waterman. Ryde restated Amy's allegations and told Waterman that Amy was being sincere, truthful, and honest. Ryde also explained that a "high proportion" of victims in these cases tell the truth, and that Amy's recall of dates, places and facts "are details that an 8–year–old can't make up, cannot lie about." Throughout the interrogation, Waterman denied any improper contact with Amy.

Amy was the first witness at trial. The trial court allowed the jury to see her videotaped CAC interview pursuant to 11 *Del. C.* § 3507, but the court stated that the videotape would not be allowed to go into the jury room. Later in the State's case, the audio tapes of Ryde's interrogation of Waterman were admitted into evidence and played for the jury. At the end of the trial, the court decided, over Waterman's objection, that the jury should have access to the CAC videotape during its deliberations. The jury convicted Waterman on multiple counts of rape and related crimes. This appeal followed.

## DISCUSSION

Waterman raises two arguments on appeal: (1) that the four pages from Amy's journal should not have been allowed into evidence, since the remaining pages were unavailable; and (2) that Amy's videotaped interview should not have been allowed to

go into the jury room during deliberations. The first issue requires little discussion. Amy brought four torn out pages from her journal to her CAC interview, and allowed Klecan to keep those pages. At some point, the rest of the journal was either misplaced or destroyed. There is no suggestion that Amy, or anyone else, intentionally disposed of the journal to prevent it from being used at trial.

■ Waterman argues that, because the entire journal was not available, he was unable to determine whether other entries might have contradicted the four pages that were introduced into evidence. He says that this limitation on his ability to effectively cross-examine Amy deprived him of a fair trial. We find no merit to this argument. The fact that the entire document no longer exists does not mean the four pages that remain must be excluded. First, there is nothing to suggest that the lost portion of the journal contradicted anything on the four remaining pages. Second, Waterman was able to examine Amy and the two child care supervisors, who had seen the entire journal, about its contents. We conclude that the trial court acted well within its discretion in admitting the four pages into evidence.[3]

Waterman's second issue on appeal has merit. He contends that the trial court erred in allowing Amy's CAC videotape to be available to the jury during deliberations. Waterman relies on the decision in *Flonnory v. State*,[4] where this Court held:

As a general matter, recorded or written out-of-court § 3507 statements that are played or read during trial should not be admitted as separate trial exhibits that the jury can take into the jury room during deliberations.... The reason derives from the concern ... that allow-

3. *Smith v. State,* 913 A.2d 1197 (Del.2006).

4. 893 A.2d 507, 526–27 (Del.2006).

ing the jury to have transcripts of trial testimony during their deliberations might result in the jury giving undue emphasis and credence to that portion of the testimony.... Thus, we hold that the "default" rule is that written or tape or video-recorded § 3507 statements should *not* be admitted into evidence as separate trial exhibits that go with the jury into the jury room during deliberations.... The trial judge does, however, have discretion to depart from this default rule when in his judgment the situation so warrants (e.g., where the jury asks to rehear a § 3507 statement during its deliberations or where the parties do not object to having the written or recorded statements go into the jury room as exhibits.)

 When the CAC videotape was played for the jury, the trial court cited *Flonnory* and ruled that the tape would not be allowed into the jury room. The trial court reversed itself at the end of the trial, however, in an effort to address a separate problem concerning the tapes of Waterman's police interrogation. Ryde made numerous inadmissible comments during his interrogation of Waterman. He described Amy's allegations of abuse, which was inadmissible hearsay. In addition, Ryde vouched for Amy's credibility and explained why he believed she was telling the truth. It is settled in Delaware that experts may not usurp the jury's function by opining on a witness's credibility.[5] The Waterman interrogation tapes should have been redacted before being played for the jury.[6] The trial court, recognizing the problem, promptly instructed the jury that Ryde's description of Amy's accusa-

tions was not evidence, and that the jury is the sole arbiter of a witness's credibility.

The trial concluded shortly after Ryde's testimony. Waterman elected not to testify and the defense rested without putting on any witnesses. At that point, the trial court reconsidered its earlier ruling on Amy's CAC videotape:

Ordinarily, and certainly as a result of Flonnory, the tape itself is not to be introduced into evidence for the jury to review during the course of its deliberations.... Flonnory allows tapes ... such as the audio tape played a little earlier of the defendant's conversation with Detective Ryde. Flonnory also allowed the Court to ... retain some discretion over whether to admit any other tapes. I am now going to exercise that discretion subject to input from counsel on this issue to allow ... the Children's Advocacy Center tape, to be a State's exhibit and there are several reasons I am exercising that discretion. One of them was really triggered by my need to explain that ... all of Detective Ryde's assertions of what Amy was saying, certain something happened in a chicken house, something happened here ... a lot of these kinds of things which are not evidence, and the jury cannot consider his statements of what she said as evidence, as I told them.

There are a number of such statements.... And, if the jury follows my instructions, and I presume that they do, they will disregard Detective Ryde's assertions of what Amy said.... That leaves the jury to consider what they heard on the tape from the Children's Advocacy Center ... which they would not otherwise have in the jury room with

---

5. *Powell v. State*, 527 A.2d 276 (Del.1987); *Holtzman v. State*, 1998 WL 666722 (Del.); *Hassan-El v. State*, 911 A.2d 385, 396 (Del. 2006).

6. *Holtzman v. State*, 1998 WL 666722 at *5.

them—versus the [defendant's tapes] on which there [are] a lot of . . . assertions that Detective Ryde repeats to Mr. Waterman. And in my view, for the jury's purposes that simply isn't fair. They need to be able to consider evidence, if you will, versus evidence, and that would not happen if [the CAC tape] were not evidence to go before them, even though they are allowed to take notes, even though they heard and saw the video.

Waterman objected, arguing that the CAC tape would give undue emphasis to the complaining witness's testimony and cause him undue prejudice.

▆ We conclude that the trial court's concerns did not justify departure from the "default" rule that § 3507 statements should not be allowed into the jury room. In *Flonnory*, this Court identified two circumstances where it might be appropriate to deviate from the default rule—if the jury requests the tape or both parties consent. Neither of those circumstances was present here. Moreover, the trial court's concern about fairness, or balance, arose because of the inadmissible statements in the Ryde tapes. The State could have avoided the "balance" problem by redacting Ryde's interrogation tapes to eliminate his numerous objectionable comments.[7] Finally, the State did not request a departure from *Flonnory*, and Waterman raised an appropriate objection. In light of all of these factors, we find that the trial court abused its limited discretion by allowing the jury to have the CAC tape during deliberations.

▆ Our decision does not require reversal, however, because we are satisfied, beyond a reasonable doubt, that the error was harmless.[8] This case was not close. Amy's testimony in court and on the CAC tape was detailed and unequivocal. Amy had a credible explanation for the delay in reporting her abuse, and she had no reason to fabricate a story—either to help herself or to harm Waterman. Other witnesses established that Waterman and Amy frequently were together at the farm, outside of the presence of other adults. The State's evidence was uncontradicted.

In addition to the strength of the State's case is the fact that the error was not significantly prejudicial. It was proper for the jury to see the CAC videotape. The error was in letting the jury have the tape to review during deliberations. Here, the trial lasted less than two days, and there was not much other evidence for the jury to consider. Thus, whether the jury reviewed the tape during deliberations or not, the contents of the tape would have been fresh in the jury's mind. In sum, the trial court's error did not deprive Waterman of a fair trial.

## CONCLUSION

Based on the foregoing, the judgments of the Superior Court are affirmed.

---

7. Waterman, also, could have eliminated this problem if he had objected to the unredacted tapes. He did not. We assume that Waterman thought it was a good trial strategy to have the jury hear him repeatedly maintaining his innocence in the face of persistent, argumentative, police questioning.

8. *Hawkins v. State*, 2006 WL 1932668 at *3 (Del.).