# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No. 2005000034 |
| | ) | |
| JOHN HERBERT, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 3, 2022
Decided: August 8, 2022

*Upon Consideration of the State's Motion in Limine*,
**GRANTED**.

*Upon Consideration of Defendant's Motion in Limine*,
**DENIED**.

## MEMORANDUM OPINION

Nicholas R. Wynn, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorney for the State of Delaware*.

James Liguori, Esquire, LIGUORI & MORRIS, Dover, Delaware. *Attorney for Defendant John Herbert*.

**BUTLER, R.J.**

Defendant John Herbert has been indicted on child sexual abuse charges. The Court previously denied Herbert's motion to dismiss the indictment.[1] The parties now move *in limine* for rulings on reports offered by two defense psychologists. The motions require the Court to apply *Wheat v. State*[2] and *Powell v. State*[3] as well as the evidentiary gatekeeping requirements that qualify a witness as an expert. Under those standards, the Court concludes that the defense's reports are inadmissible. Accordingly, the State's motion to exclude one report is granted and Herbert's motion to admit the other report is denied.

## BACKGROUND

Herbert's three-year-old daughter, A.H., alleges that Herbert allowed or directed her to "play with" his penis.[4] That allegation has led to two charges: (1) Unlawful Sexual Contact First Degree;[5] and (2) Sexual Abuse of a Child by a Person in a Position of Trust, Authority, or Supervision Second Degree.[6]

---

[1] *See generally State v. Herbert*, 2022 WL 811175 (Del. Super. Ct. Mar. 17, 2022).
[2] 527 A.2d 269 (Del. 1987) (articulating rules governing admission of expert testimony in intrafamilial child sexual abuse cases).
[3] 527 A.2d 276 (Del. 1987) (applying rules set forth in *Wheat*).
[4] For a more complete background, which includes an ill-fated "pork tenderloin," see *Herbert*, 2022 WL 811175, at *1.
[5] *See generally* 11 *Del. C.* § 769(a) (2010).
[6] *See generally id.* § 778A (2022).

Relevant here, both charges require proof that Herbert (1) caused A.H. to touch his penis; and (2) intended the touching to be "sexual in nature."[7] Herbert seeks to defeat these elements through testimony from two psychologists: Dr. Amy Cooney-Koss and Dr. Joseph Zingaro. Dr. Cooney-Koss would dispute evidence of an act—*i.e.*, whether any touching occurred. And Dr. Zingaro would dispute evidence of intent—*i.e.*, whether Herbert wanted any touching to be sexual in nature.

## A. The Proposed Testimony of Dr. Cooney-Koss

Dr. Cooney-Koss is a forensic psychologist. As part of her practice, she analyzes interviews conducted by the Children's Advocacy Center ("CAC"). A.H. was interviewed by CAC at least three times. Dr. Cooney-Koss prepared a report on those interviews.[8]

Dr. Cooney-Koss's report is structured as a commentary that provides midstream feedback on recorded statements made by A.H. to her CAC interviewer. This format enables Dr. Cooney-Koss to contrast A.H.'s narrative with narratives she considers "typical" or "common" in child sex abuse cases.[9] Dr. Cooney-Koss posits that if a child alleges sexual abuse, but the child's post-abuse behavior does not match that of an average child sex abuse victim, then the allegation is not

---

[7] *Id.* § 761(g)(1)(b)–(c) (2021). Although the charges use a "reasonable person" standard, *see id.*, the Court previously held that an objective standard does not override evidence of Herbert's subjective intent, *Herbert*, 2022 WL 811175.

[8] Ex. A to State's Mot. in Lim. [hereinafter "Cooney-Koss Report"].

[9] *Id.* at 3.

credible. Thus, Dr. Cooney-Koss's conclusions are directed almost exclusively to A.H.'s credibility as a reporter of her abuse.

According to Dr. Cooney-Koss, A.H.'s descriptions of her alleged abuse and her overall attitude toward it are too "light and playful" to suggest that Herbert sexually abused her.[10] Similarly, Dr. Cooney-Koss finds A.H.'s memory and version of the events to be "not consistent,"[11] "vague,"[12] "illogical,"[13] "implausible,"[14] and "contradictory."[15] Dr. Cooney-Koss even says that some of the ways in which A.H. claims Herbert abused her would be physically impossible.[16]

Dr. Cooney-Koss ultimately opines that A.H. does not exhibit qualities or symptoms of a child who has been sexually abused.[17] Accordingly, Dr. Cooney-Koss would advise the jury to disbelieve A.H.:

> [N]o one, including myself, is able to determine the veracity of the alleged victim's statements with certainty . . . . [But] there tend to be characteristics of victims . . . that more commonly occur . . . .
>
> [I]f A.H.'s statements about her father's actions are hypothetically accepted, they are not consistent with how sexually abusive crimes . . . are typically perpetrated . . . . The totality of inconsistencies in A.H.'s statements . . . as compared to other confirmed cases of sexual abuse raise serious concerns about the fidelity of her [allegations] . . . .

---

[10] *Id.* at 7.
[11] *Id.* at 8.
[12] *Id.* at 6.
[13] *Id.* at 9.
[14] *Id.*
[15] *Id.* at 5.
[16] *See, e.g., id.* at 7.
[17] *E.g., id.* at 7–8.

In conclusion, A.H.'s presentation and statements during the CAC videos offer data that is worthy of consideration when the finder of fact is attempting to ascertain the credibility of the allegations . . . . I have identified several irregularities in most of the allegations A.H. made . . . .[18]

## B. The Proposed Testimony of Dr. Zingaro

Herbert's other expert is Dr. Zingaro. Dr. Zingaro is the clinical director of a counseling center in Milford, Delaware. He concentrates his practice on family psychology and identity issues.

Herbert has not asserted a psychiatric defense. Herbert's motion to dismiss the indictment was directed to the state of mind—*i.e.*, intent—criminalized by the charged offenses.[19] Nonetheless, Dr. Zingaro examined him to determine whether he has "clinical psychopathology."[20]

Dr. Zingaro made a report that excludes mental "disease or defect." He then offers an explanation as to what Herbert may have been thinking at the time of the allegations.[21] But Dr. Zingaro's report does not read like a psychological assessment. Instead, the report operates as vehicle for transmitting testimony about the state of Herbert's "normal" mind from various individuals who would prefer not to be cross-examined in court.

---

[18] *Id.* at 8–9.
[19] *See Herbert*, 2022 WL 811175, at *3, *7–9.
[20] Ex. A to State's Opp'n to Def.'s Mot. in Lim. at 4 [hereinafter "Zingaro Report"].
[21] *See generally id.* at 1–5.

Dr. Zingaro's report journalistically compiles statements and anecdotes about Herbert's upbringing and personality that were provided by Herbert, his parents, his past employers, and his therapist. These witnesses relayed to Dr. Zingaro that Herbert was raised by "scientists" who taught him to be culturally open-minded and to explore sexuality without fear of societal taboo.[22] Dr. Zingaro does not analyze these accounts. He simply observes that Herbert had a "unique" childhood, which, in turn, might have inspired him to be an unconventional parent.[23] Dr. Zingaro thus suggests that Herbert likely intended any touching between him and A.H. to be "intellectual" or otherwise innocuous, but not sexual in nature.[24]

## C. These Motions

The parties have moved *in limine* based on the defense's reports. The State seeks to exclude Dr. Cooney-Koss's report, arguing that it offers opinion prohibited by *Wheat v. State*[25] and *Powell v. State*.[26] Herbert opposes the State's motion and has filed one of his own. He seeks to admit Dr. Zingaro's report, arguing that it will assist the jury in understanding Herbert's intent by painting a more complete picture of Herbert's background. The State opposes Herbert's motion. The motions are now ripe for decision.

---

[22] *Id.* at 3–4.
[23] *Id.* at 5.
[24] *Id.*
[25] 527 A.2d 269 (Del. 1987).
[26] 527 A.2d 276 (Del. 1987).

**STANDARD OF REVIEW**

On a motion *in limine*, the Court balances evidentiary objections against "the end of ascertaining the truth[.]"[27]  The Court will exclude evidence that is irrelevant or inadmissible under the Rules of Evidence or applicable precedent.[28]

Rule 702 governs expert testimony.[29]  "When a party offers expert testimony, the court must determine whether the proffered expert's knowledge will assist the trier of fact."[30]  In doing so, the Court "must act as a gatekeeper" to ensure that the "expert's opinion [is] based upon a proper factual foundation and sound methodology[.]"[31]  This inquiry is "flexible."[32]  It is "tied to the facts of a particular case" and depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony."[33]  Accordingly, the Court has "considerable leeway" in deciding whether expert testimony is admissible.[34]

---

[27] Del. R. Evid. 102.

[28] *Id.* R. 402.

[29] *See generally id.* R. 702.

[30] *Pavey v. Kalish*, 2010 WL 3294304, at \*3 (Del. Aug. 23, 2010) (citing Del. R. Evid. 702).  *See generally Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 590–91 (1993).

[31] *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010).

[32] *Gen. Motors Corp. v. Grenier*, 981 A.2d 531, 536 (Del. 2009).

[33] *Bowen v. E.I. du Pont de Nemours & Co., Inc.*, 906 A.2d 787, 794–95 (Del. 2006) (internal quotation marks and citations omitted).

[34] *Garden v. State*, 815 A.2d 327, 338 (Del. 2003) (internal quotation marks omitted), *overruled on other grounds by Rauf v. State*, 145 A.3d 430 (Del. 2016).

The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence.[35] In determining the admissibility of expert opinion, the Court considers whether

> (i) the witness is qualified as an expert by knowledge, skill experience, training or education; (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (iv) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[36]

Relevance and reliability orient this analysis.[37]

To be relevant, expert testimony must help the jury "understand the evidence or . . . determine a fact in issue."[38] So an expert opinion is not relevant unless it "fits" the case, *i.e.*, makes "a valid . . . connection" from its conclusion to the "pertinent" issues.[39] To be reliable, expert testimony must "be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."[40] As a result, "an expert's testimony is unreliable even when the underlying data are sound if the expert draws conclusions from that data based on a flawed methodology."[41] "The

---

[35] *E.g.*, *Sturgis v. Bayside Health Ass'n Chartered*, 942 A.2d 579, 584 (Del. 2007).
[36] *Cunningham v. McDonald*, 689 A.2d 1190, 1193 (Del. 1997) (internal quotation marks and citations omitted).
[37] *E.g.*, *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013).
[38] *Daubert*, 509 U.S. at 591 (internal quotation marks omitted).
[39] *In re Asbestos Litig.*, 911 A.2d 1176, 1199 (Del. Super. Ct. 2006) (internal quotation marks omitted).
[40] *Daubert*, 509 U.S. at 590.
[41] *Tumlinson*, 81 A.3d at 1270 (internal quotation marks omitted).

polestar [of admissibility] must always be . . . the evidentiary . . . reliability of the principles that underlie a proposed submission."[42]

Technical qualifications alone do not make an expert's opinion admissible. An expert may be qualified to opine on some matters but disqualified from opining on others.[43] So expert opinion is inadmissible not only if it lacks requisite credentials, but also if it "embraces matters in which" non-experts are "just as competent . . . *i.e.*, matters not beyond the ken of the average layman."[44] Nothing in the Rules of Evidence requires the Court "to admit . . . the *ipse dixit* of the expert."[45]

## ANALYSIS

This case involves "intrafamilial" child sexual abuse.[46] On June 11, 1987, the Delaware Supreme Court issued two decisions—*Wheat* and *Powell*—that defined the extent to which an expert may testify in intrafamilial child sexual abuse cases. Since then, only two Delaware cases—*Wittrock v. State*[47] and *State v. Floray*[48]— have discussed *Wheat* and *Powell* in a way relevant to the parties' motions.[49]

---

[42] *Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826, 843 (Del. Super. Ct. 2000).
[43] *See Tumlinson*, 81 A.3d at 1270.
[44] *Wheat*, 527 A.2d at 272–73 (internal quotation marks omitted).
[45] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[46] *See generally State v. Redd*, 642 A.2d 829, 832 (Del. Super. Ct. 1993) (defining "intrafamily" as "within a family" (citing *Black's Law Dictionary* (6th ed. 1990))).
[47] 1993 WL 307616 (Del. July 27, 1993).
[48] 715 A.2d 855 (Del. Super. Ct. 1997), *aff'd*, 720 A.2d 1132 (Del. 1998).
[49] Compare, e.g., *State v. Ward*, 2022 WL 576820, at *6–7 (Del. Super. Ct. Feb. 22, 2022) (statistical evidence of genital injuries); *Felton v. State*, 2003 WL 21529302, at *2–3 (Del. July 3, 2003) (statistical evidence of correlation between CAC

9

Although limited in number, these cases do establish some rules that govern here. And each of those rules assumes that the proffered evidence meets Rule 702's threshold requirements.

As explained below, Dr. Cooney-Koss's report is inadmissible under *Wheat* and *Powell* and Dr. Zingaro's report is inadmissible under Rule 702.

## A. Dr. Cooney-Koss's testimony is inadmissible.

Dr. Cooney-Koss will highlight "irregularities" in A.H.'s allegations and question their "fidelity."[50] But under *Wheat* and *Powell*, an expert cannot directly or indirectly attack the complaining witness's credibility. Dr. Cooney-Koss's report does both. So it must be excluded.

### 1. Under *Wheat* and *Powell*, expert testimony is inadmissible if it directly or indirectly attacks the complaining witness's credibility.

#### a. *Wheat* and *Powell* limited experts in intrafamilial child sexual abuse cases to testimony that contextualizes a complaining witness's allegations or conduct but otherwise prohibited experts from making credibility determinations.

---

interviews and arrests); *Redd*, 642 A.2d at 831–33 (applicability of *Wheat* and *Powell* to cases outside the intrafamilial child sexual abuse context); *State v. Webb*, 1993 WL 331074, at \*2 (Del. Super. Ct. Mar. 19, 1993) (statistical evidence involving eyewitnesses); *Cobb v. State*, 765 A.2d 1252, 1256–57 (Del. 2001) (interaction between *Wheat* and *Powell* and evidence of bad acts); *Condon v. State*, 597 A.2d 7, 9–12 (Del. 1991) (applicability of *Wheat* and *Powell* to "intra-household" child sexual abuse).

[50] Cooney-Koss Report at 9.

Decided on the same day, *Wheat* and *Powell*[51] addressed the use of expert testimony in intrafamilial child sexual abuse cases. The complaining witnesses in *Wheat* and *Powell* alleged that they were raped by their stepfathers. But they also took acts that, at least in 1987, could have been viewed as "superficially inconsistent" with their allegations.[52] The complaining witness in *Wheat* recanted her allegation and the complaining witness in *Powell* waited over a year before reporting hers.

To prove that recantations and reporting delays are *consistent* with intrafamilial child sexual abuse, the State introduced expert testimony. On their own, recantation and late reporting do not implicate a witness's credible (or incredible) testimony concerning an incident. Yet, the experts "evaluate[d] the complainant[s'] credibility in terms of statistical probabilities."[53] In *Powell*, for example, the expert testified that 99% of child sexual abuse complainants tell the truth.[54] These statistics "indirectly but pointedly" bolstered the complaining witnesses' truthfulness.[55]

---

[51] The Court cites primarily to *Wheat* because *Powell* merely follows *Wheat*, which announced the controlling law and appears to have been written first.

[52] *Wheat*, 527 A.2d at 273.

[53] *Id.* at 274.

[54] *Powell*, 527 A.2d at 279.

[55] *Wheat*, 527 A.2d at 274.

11

The Supreme Court found that "tensions unique to the trauma experienced by a child sexually abused by a family member have remained largely unknown to the public[.]"[56] As a result, an intrafamilial child sexual abuse victim may do or say things that, "to average laypeople," may seem "superficially bizarre, seemingly unusual, seemingly inconsistent, or normally attributable to inaccuracy or prevarication."[57] To educate jurors on why this may happen, the Supreme Court approved "limited" expert testimony.[58] *Wheat* and *Powell* held that expert testimony is admissible only to provide background on the psychosocial principles involved in intrafamilial child sexual abuse so as to contextualize the complaining witness's testimony and behavior.[59]

Under *Wheat* and *Powell*, expert testimony is admissible only if the "complainant's behavior or testimony" is (i) "to the average layperson," "superficially inconsistent with the occurrence of [sexual abuse;]" (ii) "otherwise inadequately explained" by common experience; and (iii) "especially attributable to

---

[56] *Id.* at 273 (internal quotation marks and citation omitted).

[57] *Id.* (internal quotation marks and citations omitted).

[58] *Id.* at 274. Although *Wheat* and *Powell*'s concerns may seem a bit dated, the Supreme Court did imagine that developments in psychological research and social norms would "obviat[e] the need" for expert testimony one day. *See Powell*, 527 A.2d at 279 n.3. In other words, the Supreme Court anticipated that behavior it considered inconsistent in 1987 would become commonplace somewhere down the road. Consistent with that prediction, the question of whether experts will be useful is today fact-specific and not controlled by the presence of phenomena that may have been considered strange in the past. *See Wittrock*, 1993 WL 307616, at *2.

[59] *Wheat*, 527 A.2d at 275.

intrafamily child sexual abuse rather than simply stress or trauma in general."[60] Testimony as to all three prongs must be given "in general terms and directed to behavior factors in evidence[.]"[61] Testimony as to the attribution prong also must "demonstrate[] a special nexus to the crime charged[.]"[62]

Still, the Supreme Court recognized that expert testimony "carries the potential for credibility enhancement."[63] "Because of its tendency to bolster the believability of the complainant, and, conversely, to cast doubt on the denial of the defendant, use [of expert testimony] . . . might be unduly prejudicial."[64] To counteract this effect, the Supreme Court further held that experts in intrafamilial child sexual abuse cases "may not *directly or indirectly* express opinions on the veracity of" the complaining witness's allegations or conduct.[65] Under *Wheat* and *Powell*, an expert may testify to "general principles of social or behavioral science" that may "assist the jury in determining the child's credibility."[66] But the expert cannot sit as the thirteenth juror or determine the truth on the jury's behalf.

Applying its test, the Supreme Court in *Wheat* and *Powell* found that the experts' statistical models improperly enhanced the complaining witnesses'

---

[60] *Id.* at 273–75.
[61] *Id.* at 275.
[62] *Id.* at 274.
[63] *Id.*
[64] *Id.*
[65] *Id.* (emphasis added).
[66] *Id.*

credibility.[67]   Ordering new trials, the Supreme Court emphasized that an expert in an intrafamilial child sexual abuse case cannot be used as a "lie detector."[68]

### b. Post-*Wheat* and -*Powell* cases confirm that these rules apply outside the context of recantations and delays and to experts that attack, as well as support, the complaining witness's credibility.

*Wheat* and *Powell* did not answer all the questions concerning expert witnesses in intrafamilial child sex abuse cases.  For one, *Wheat* and *Powell* dealt only with recantations and reporting delays.[69]  A.H. did not recant or delay reporting her allegations.  For another, *Wheat* and *Powell* were concerned with prosecution experts and not defense experts.[70]  Dr. Cooney-Koss is a defense expert, not a prosecution expert.

Subsequent caselaw examined these issues.  *Wittrock v. State*[71] expanded the list of witness inconsistences subject to *Wheat* and *Powell*'s anti-credibility rules.  And *State v. Floray*[72] collapsed any distinction between prosecution and defense experts that *Wheat* and *Powell* may have implied.

---

[67] *Id.* at 274.

[68] *Id.* at 275 (internal quotation marks omitted).

[69] *See id.* at 274 ("We accept . . . and recognize the materiality of expert testimony[] in cases where there has been a delay in reporting the incident and/or a recantation, which seeks to explain the significance of such a delay or recantation.").

[70] *See Redd*, 642 A.2d at 832 n.1 ("The Court . . . does not reach the question of whether or not, in an intrafamily child sexual abuse case, a defendant may introduce . . . expert testimony where the State has not sought to do the same.").

[71] 1993 WL 307616 (Del. July 27, 1993).

[72] 715 A.2d 855 (Del. Super. Ct. 1997) (*Floray I*), *aff'd*, 720 A.2d 1132 (Del. 1998) (*Floray II*).

In *Wittrock*, the complaining witness alleged that she had been raped by her stepfather, the defendant. The witness, however, did not recant or delay. She instead exhibited Stockholm Syndrome:[73] she "cared for" the defendant and "wished to be adopted by him[.]"[74] The trial court permitted an expert to explain how these comments related to intrafamilial child sexual abuse.

On appeal, the defendant argued that the expert should have been excluded because *Wheat* and *Powell* confine expert testimony to recantations and reporting delays.[75] But the Supreme Court disagreed. The Supreme Court clarified that "[d]elay in reporting and recantation are the primary, but not the only, examples of behavior and statements which allow expert testimony[.]"[76] Instead, "whether an expert's testimony will be useful depends upon the child's behavior or statements."[77] The Supreme Court also reaffirmed that, no matter the inconsistency at issue, an expert cannot veer into the realm of credibility determinations:

---

[73] *See generally What is Stockholm Syndrome?*, WebMD, https://www.webmd.com/mental-health/what-is-stockholm-syndrome (last updated Apr. 13, 2021) ("Stockholm Syndrome is an emotional response. It happens to some abuse and hostage victims . . . . Someone who has Stockholm Syndrome might have confusing feelings toward the abuser, including: love, sympathy, empathy, and [a desire] to protect them." (formatting omitted)).

[74] *Wittrock*, 1993 WL 307616 at *2.

[75] *Id.*

[76] *Id.* (citing *Wheat*, 527 A.2d at 274).

[77] *Id.*

> An expert may testify about child sexual abuse syndrome where the complainant has displayed behavior or made statements [that], though the average layperson would not recognize as consistent with the occurrence of sexual abuse, are actually attributable to intrafamily child sexual abuse. Expert testimony is admissible in such instances since it assists the trier of fact to evaluate the psychological dynamics and behavior patterns of alleged victims not within a layperson's common experience while also permitting the trier of fact to determine the credibility of the victim's and other witness' testimony. Thus, in cases of alleged child sexual abuse experts may testify to general principles of social or behavioral science, but may not make credibility determinations.[78]

Because the expert in *Wittrock* "explained the significance" of the complaining witness's "actions and statements without passing judgment on [her] credibility[,]" the Supreme Court found the expert's testimony proper under *Wheat* and *Powell*.[79]

*Floray* separately confirms that *Wheat* and *Powell*'s anti-credibility rules apply equally to the other side of the coin: when an expert attacks, rather than supports, the complaining witness's truthfulness.

The defendant in *Floray* was accused of sexually abusing his seven-year-old daughter and her ten-year-old friend. The defendant thought an expert would "assist the jury in determining . . . the victim[s'] credibility . . . in the face of [his] denials."[80] So he moved to admit expert testimony "regarding the propensity of children . . . to falsify allegations of sexual misconduct."[81]

---

[78] *Id.* (citations omitted).
[79] *Id.*
[80] *Floray I*, 715 A.2d at 857.
[81] *Id.* at 863.

The Court denied the motion. Applying *Wheat* and *Powell*, the Court ruled that the defense's expert could not opine on the complaining witnesses' credibility.[82] Doing so would "impermissibly invade the province of the jury by commenting on the truthfulness of the witnesses[.]"[83] On appeal, the Supreme Court affirmed. It agreed that "[t]he issue [of] the credibility of the child witnesses . . . was properly left to the jury."[84] In reaching these conclusions, the *Floray* decisions did not distinguish between prosecution and defense experts. *Wheat* and *Powell*'s anti-credibility rules apply across the board.

In sum: *Wheat* and *Powell* cabined the use of an expert in intrafamilial child sexual abuse cases to generalized psychosocial testimony that situates in a behavioral context the complaining witness's allegations and conduct. *Wheat* and *Powell* preclude experts, whether offered by the State or the defense, from opining directly or indirectly on the complaining witness's credibility or truthfulness.

**2. Dr. Cooney-Koss's report directly and indirectly attacks A.H.'s credibility.**

Dr. Cooney-Koss's report is inadmissible under *Wheat* and *Powell*. Her report does not speak in general terms or discuss principles of intrafamilial child sexual

---

[82] *Id.* at 862–63. The Court identified several other reasons why the expert's testimony would be improper, including that the defendant "made no showing that the alleged victims . . . displayed any behavior [that] the average lay person would need assistance in understanding[.]" *Id.* at 864.

[83] *Id.* at 863.

[84] *Floray II*, 720 A.2d at 1163.

abuse. Nor does it seek to place A.H.'s allegations and conduct in a behavioral context. And it does not identify any nexus—let alone a "special nexus"—connecting A.H.'s supposedly unbelievable demeanor and statements to the unique problems caused when a father allegedly sexually abuses his daughter.[85] To the extent Dr. Cooney-Koss's report ever mentions these factors and concepts, the report binds them inextricably to credibility determinations reserved solely for the jury.

Rather than assist the jury, Dr. Cooney-Koss intends to join it. Dr. Cooney-Koss engages in a line-by-line rebuttal of A.H.'s allegations that is reminiscent of the "lie detector" technique *Wheat* and *Powell* abolished.[86] She then compares the allegations with "typical" or "common" cases, reasoning unsoundly that what is unusual is necessarily untrue.[87] Taken together, Dr. Cooney-Koss deems A.H.'s allegations illogical, self-contradictory, and physically impossible. *Wheat* and *Powell* bar all these direct credibility attacks. The rest of Delaware law does too.

---

[85] *Wheat*, 527 A.2d at 274.

[86] *Id.* at 275.

[87] *See, e.g., id.* at 273 ("Exposing jurors to the unique interpersonal dynamics involved in prosecutions for intrafamily child sexual abuse can provide jurors with *possible alternative explanations* for complainant actions and statements that are, to average laypeople, . . . *normally attributable* to inaccuracy or prevarication." (emphases added) (internal quotation marks and citations omitted)); *see also Tumlinson*, 81 A.3d at 1269–70 (directing admissibility analysis to "principles and methodologies, not [to] the conclusions they generate" and explaining that an expert's testimony is unreliable if the expert draws conclusions from a flawed methodology (internal quotation marks omitted)); *Perry*, 996 A.2d at 1267 (requiring expert testimony to be based on a "sound methodology").

"It is settled in Delaware that experts may not usurp the jury's function by opining on the witness's credibility."[88]

To be sure, Dr. Cooney-Koss does not actually call A.H. a liar. In her opinion, A.H. is just not telling the truth. But "[a] doctor cannot pass judgment on the alleged victim's truthfulness in the *guise* of a medical opinion[.]"[89] Jurors are the experts on the truth.[90] There is no room for another.

To contend otherwise, Herbert advances Dr. Cooney-Koss's resume. Dr. Cooney-Koss's report is admissible, Herbert insists, because Dr. Cooney-Koss is an experienced psychologist who knows things about sexual abuse that jurors do not. But Dr. Cooney-Koss's *bona fides* are beside the point. Expert testimony that is qualified in form (*i.e.*, properly credentialed) nevertheless may be disqualified in substance (*i.e.*, improperly focused).[91] Although Dr. Cooney-Koss is concededly experienced, she was precluded from using her experience to attack A.H.'s credibility. She did anyway. The jury, not Dr. Cooney-Koss, will decide whether

---

[88] *Waterman v. State*, 956 A.2d 1261, 1264 (Del. 2008).

[89] *Floray I*, 715 A.2d at 863 (emphasis added) (cleaned up).

[90] *See, e.g.*, *Poon v. State*, 880 A.2d 236, 238 (Del. 2005) ("It is the sole province of the fact finder to determine witness credibility[.]"); *Redd*, 642 A.2d at 835 ("[Q]uestions of a victim's credibility are reserved exclusively for a jury.").

[91] *See Grenier*, 981 A.2d at 529 ("[A]n expert's methodology must be not only reliable intrinsically but also be reliably applied to the facts of the specific case[.]" (citations omitted)).

19

A.H.'s story is false. Accordingly, her report is inadmissible and the State's motion is granted.

## B. Dr. Zingaro's testimony is inadmissible.

The Court now turns to Dr. Zingaro. Recall that Dr. Zingaro's report is about Herbert, not A.H. This puts his report outside *Wheat* and *Powell*.[92] Even so, no expert is exempt from Rule 702's gatekeeping requirements.[93] Those requirements render Dr. Zingaro's report inadmissible.[94]

### 1. Dr. Zingaro's "expert" opinion on Herbert's mental health is irrelevant and his observations about Herbert's background do not rest on scientific or specialized knowledge.

Under Rule 702, an expert's knowledge and methods must be scientific or specialized and the opinion they generate must be relevant.[95] Here, Dr. Zingaro

---

[92] Although Dr. Zingaro does not cite to Dr. Cooney-Koss's report, there are times when Dr. Zingaro seems to allude to it. *Compare* Cooney-Koss Report at 3 (criticizing A.H.'s use of the word "cute" to describe Herbert's penis and offering that children have an unrefined conception of time), *with* Zingaro Report at 3 ("The family did not use 'cute names' for sexual body parts."), *and* Zingaro Report at 5 ("Children's concept of time is not the same as an adult's concept of time."). The State does not argue, and the Court does not find, that these parities bring Dr. Zingaro's report within *Wheat* and *Powell*.

[93] *See Wheat*, 527 A.2d at 272 (conducting Rule 702 analysis of expert's qualifications before discussing intrafamilial child sexual abuse opinions).

[94] Because Dr. Zingaro's report is inadmissible under Rule 702, the Court need not reach the State's argument that the report proffers inadmissible "profile" evidence. *See generally Floray I*, 715 A.2d at 860–61.

[95] *See* Del. R. Evid. 702(a); *cf. Tumlinson v. Advanced Micro Devices, Inc.*, 106 A.3d 983, 991 (Del. 2013) (expert testimony inadmissible if it is either irrelevant or unreliable).

examined Herbert and concluded that he is not a clinical psychopath. But the State has not challenged Herbert's mental health. And Herbert has not raised his mental health as a defense. So it does not matter whether he is a psychopath or not.[96] Accordingly, Dr. Zingaro's "expert" psychiatric opinion is irrelevant.

Having concluded that Herbert does not suffer with a mental disease or defect that might constitute a defense to the charge, Dr. Zingaro's report nonetheless opines on Herbert's probable intent in committing the acts alleged. It is true that expert opinion is not "objectionable merely because it embraces an ultimate issue to be decided" by the jury, including the defendant's intent.[97] Indeed, the Delaware Rules of Evidence rejected the federal rule prohibiting an expert from opining on the defendant's state of mind.[98] Even so, an expert's opinion is inadmissible if it would

---

[96] *See, e.g.*, *Tumlinson*, 106 A.3d at 990 ("Expert testimony [that] does not relate to any issue in the case is not relevant and, ergo, non-helpful." (internal quotation marks omitted)).

[97] *See* Del. R. Evid. 704; *see also Hudson v. State*, 956 A.2d 1233, 1240 (Del. 2008).

[98] *Compare* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."), *with* Del. R. Evid 704 cmt. ("In 2001, the Permanent Advisory Committee on the Delaware Uniform Rules of Evidence considered adopting F.R.E. 704(b) . . . . The Committee found F.R.E. 704(b) inconsistent with D.R.E. 704 and, therefore, recommended against adopting a similar provision.").

"confuse the issues or mislead the jury[.]"[99]  Those dangers are heightened when expert opinion overlaps the jury's function of discerning the defendant's intent.[100]

Here, Dr. Zingaro cleared Herbert's mental health.  Herbert never argued otherwise.  Instead, he seeks to cast doubt on the statutory element of his intent.  Accordingly, Dr. Zingaro's psychiatric opinion will mislead or confuse the jury by suggesting that only diagnosed psychopaths can form the intent to commit child sexual abuse.[101]

Shorn of references to psychopathy, Dr. Zingaro's report simply transcribes hearsay statements made by Herbert and his family and then concludes that Herbert had a "unique" childhood.  It does not take a doctoral degree or decades of clinical practice to tell a client's life-story.[102]  Indeed, Dr. Zingaro does not offer a scientific or specialized explanation as to why Herbert's unique childhood may have caused

---

[99] *Tolson v. State*, 900 A.2d 639, 645 (Del. 2006) (citation omitted).
[100] *See Bates v. State*, 386 A.2d 1139, 1144 (Del. 1978) (observing that, although expert opinion on defendant's intent is permissible, it can tend to "create confusion in the minds of the jurors" and accordingly cautioning that such opinion should be "closely scrutinized" before being admitted).
[101] *See Gray v. State*, 441 A.2d 209, 224–25 (Del. 1981); *State v. Salasky*, 2013 WL 5487363, at *28 (Del. Super. Ct. Sept. 26, 2013); *State v. Wallace*, 2007 WL 545563, at *12–13 (Del. Super. Ct. Jan. 26, 2007).
[102] *See Ward v. Shoney's, Inc.*, 817 A.2d 799, 803 (Del. 2003) ("[T]he objective of the gatekeeping requirement is . . . to make certain that an expert . . . employs in the courtroom *the same level of intellectual rigor that characterizes the practice* of an expert in the relevant field." (emphasis added) (internal quotation marks omitted)).

him to view any sexual touching that occurred between him and A.H. as educational or innocuous. Dr. Zingaro merely recounts Herbert's biography as it was fed to him.

Properly understood, then, Dr. Zingaro's thoughts on Herbert's personality comprise lay opinions, not expert opinions.[103] Without the patina of a psychiatric resume, Dr. Zingaro's report is little more than a conduit for out-of-court statements from lay witnesses who attempted to explain that Herbert meant nothing sexual by any touching that may have occurred. By cloaking those layman's terms in technical jargon, Dr. Zingaro effectively bolsters the credibility of hearsay witnesses.[104] He cannot do that. Accordingly, the report is inadmissible.

None of this is to suggest that the underlying details about Herbert's life are inadmissible on the issue of his intent. Because Herbert's background is a matter of personal knowledge, Herbert and those close to him are free to testify. And he is certainly free to tell the jury that he meant nothing sexual in his behavior. Herbert has not claimed that he or his family would be unable or unwilling to do that. Either

---

[103] *See* Del. R. Evid. 701(a), (c), 702; *see also Mulkey v. State*, 1990 WL 72574, at *2 (Del. May 15, 1990) (finding that testimony of social worker designed to "lay a factual background" for out-of-court statements was not "expert opinion evidence").
[104] *See Re v. State*, 540 A.2d 423, 427 (Del. 1988) ("When an expert relies on the statements of another person in formulating an opinion, that person's credibility is at issue . . . . In judging the credibility of the speaker, the jury should have the benefit of the information [that] might illuminate the speaker's propensity for truthfulness or the lack of it." (citations and footnote omitted)).

way, Rule 702 blocks Herbert's attempt to use Dr. Zingaro as a mouthpiece for his and his family's lay opinions.

## 2. Herbert's contrary caselaw does not support admission.

To propose a different result, Herbert cites a New Jersey case, *State v. Burr*.[105] *Burr* is inapposite.

In *Burr*, the defendant was accused of molesting his underage piano students. He also had Asperger's Disorder. Asperger's Disorder causes "severe and sustained impairment in social interaction" and "socially . . . inappropriate behavior[.]"[106]

The defendant in *Burr* could not be convicted unless he intended to obtain sexual arousal or gratification from his touching.[107] So he sought to introduce expert testimony to contextualize his "odd behavior"—which included sitting young girls on his lap and "touching their private parts"[108]—within Asperger's Disorder. The expert opined that the defendant's touching likely was intended as an (ill-considered) way to relate to his students, not as an effort to "groom" or sexually abuse them.[109]

---

[105] 948 A.2d 627 (N.J. 2008).

[106] *Id.* at 628 n.2 (internal quotation marks and citations omitted). Asperger's Disorder or Syndrome was deformalized in 2013 by the American Psychiatric Association and now is considered part of the autism spectrum. *See generally Autism Spectrum Disorder*, CDC, https://www.cdc.gov/ncbddd/autism/hcp-dsm.html (last updated Apr. 6, 2022).

[107] *See generally* N.J. Stat. Ann. §§ 2C:14-1(d), 2C:14-2(b) (West 2022). In contrast, the General Assembly purposefully removed a gratification element from the definition of sexual contact. *See Herbert*, 2022 WL 811175, at *7.

[108] *Burr*, 948 A.2d at 630.

[109] *See id.* at 630, 632–33.

The Supreme Court of New Jersey found this testimony admissible because it was relevant to the question of the defendant's intent and "lessen[ed] [his] chance of being misunderstood by the jury."[110]

This case is different. The defendant in *Burr* raised a state of mind defense that depended on specialized knowledge about a mental illness. It therefore was appropriate for an expert to opine on the ways in which the defendant's mental health may have impacted his conduct and intent. By contrast, Herbert's own expert found that he does *not* have a mental illness. Unlike the defendant in *Burr*, there is no evidence-based reason to think Herbert is unable to understand that allowing a three-year-old girl to "play with" an adult man's penis is illegal.

Rather than a social disorder, Herbert's state of mind defense depends on his "countercultural" lifestyle and ideas about the world.[111] Those beliefs are personal choices, not psychological symptoms, and so do not require guidance from an expert to be understood.[112] To the contrary—and as Dr. Zingaro's report demonstrates—Herbert's beliefs about sexuality are adequately explainable by him and his family.

---

[110] *Id.* at 632–34.

[111] Zingaro Report at 2. *See also Herbert*, 2022 WL 811175, at *3 ("It . . . appears [Herbert] is concerned that a jury may convict him simply because his subjective belief was not what a reasonable person may have had in mind.").

[112] *Cf. Burr*, 948 A.2d at 634 (The defendant "must be permitted the opportunity to present at trial evidence that tends to prove that *he has a medical basis for such behaviors in order to explain himself and his condition* and, thereby, to lessen the chance of being misunderstood by the jury." (emphasis added)).

For that reason, excluding Dr. Zingaro will not, as Herbert fears, suppress evidence of Herbert's "whole person."[113] The defendant in *Burr* could not have called lay witnesses. Specialized knowledge was required to explain how Asperger's Disorder could cause the defendant's conduct. So precluding his expert would have been tantamount to excluding all evidence of his state of mind.

Here, precluding Dr. Zingaro will not eliminate Herbert's right to dispute his state of mind. Herbert's "whole person" is the product of various biographical experiences. So he and his family are best poised to discuss them. Herbert cannot use expert opinion to bolster with "scientific-sounding terminology" the credibility of a defense that is fully supportable by and understandable to non-experts.[114] Accordingly, Dr. Zingaro's report is inadmissible.

## CONCLUSION

Dr. Cooney-Koss's report is inadmissible under *Wheat* and *Powell* because it directly and indirectly attacks A.H.'s credibility. And Dr. Zingaro's report is inadmissible under Rule 702 because its psychiatric conclusions are irrelevant and its remaining findings are not proper subjects of expert opinion. Accordingly, the State's motion *in limine* is **GRANTED** and Herbert's motion *in limine* is **DENIED**.

---

[113] Def.'s Mot. in Lim. at 13 (quoting *Burr*, 948 A.2d at 633).

[114] *Schueller v. Cordrey*, 2017 WL 631769, at *2 (Del. Super. Ct. Feb. 15, 2017) (internal quotation marks omitted). *See also Hopkins v. Astrazeneca Pharms., LP*, 2010 WL 1267219, at *1 (Del. Super. Ct. Mar. 31, 2010) ("[E]leventh hour scientific and medical research" cannot be used to bolster credibility. (citation omitted)).

**IT IS SO ORDERED**.

Charles E. Butler, Resident Judge