# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM S32740

———————————

## UNITED STATES
*Appellee*

**v.**

## Elijah W. SCHINDLEY
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 December 2023

———————————

*Military Judge*: Mark F. Rosenow.

*Sentence*: Sentence adjudged 22 July 2022 by SpCM convened at Sheppard Air Force Base, Texas. Sentence entered by military judge on 27 August 2022: Bad-conduct discharge, confinement for 180 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Matthew L. Blyth, USAF; Major Abhishek S. Kambli, USAF.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, DOUGLAS, and WARREN, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge WARREN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

DOUGLAS, Judge:

At a special court-martial, a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of two specifications of indecent conduct, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Appellant was sentenced by the military judge to a bad-conduct discharge, confinement for 180 days, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or the adjudged sentence, and provided the language for the reprimand.

Appellant raises two assignments of error which we have reworded: (1) whether the military judge committed plain error during his Rule for Courts-Martial (R.C.M.) 910(e) factfinding inquiry, thereby violating Appellant's right to remain silent; and (2) whether Appellant's sentence is inappropriately severe.

We find no error materially prejudicial to Appellant's substantial rights. Accordingly, we affirm the findings and the sentence.

## I. BACKGROUND

Appellant and CK were both from Mentor, Ohio. They began a romantic relationship in the summer of 2021, when Appellant was 18 years old and CK was 14 years old. CK turned 15 years old in the fall of 2021. Appellant joined the Air Force on 14 September 2021, in part, to provide income for his future with CK. On 4 November 2021, Appellant and CK engaged in oral and vaginal sex in a hotel room in San Antonio, Texas, the same day Appellant graduated from the Air Force's basic military training. On 5 November 2021, Appellant reported to Sheppard Air Force Base in Texas; later that month he turned 19 years old. On 25 November 2021, CK sent Appellant a topless photograph of herself via electronic means. Over the holidays, in December 2021, Appellant and CK were engaged to be married. Appellant maintained possession of the topless photograph until it was discovered by law enforcement on approximately 2 March 2022.

On 20 May 2022, after preferral of charges in this case, and as part of a plea agreement, Appellant offered to plead guilty to two specifications of indecent conduct in violation of Article 134, UCMJ; specifically, Appellant agreed to plead guilty to engaging in sexual acts with a minor (Specification 1 of the

---

[1] All references in this opinion to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

Charge) and possessing a topless photograph of a minor (Specification 2 of the Charge). In return, the convening authority agreed to withdraw and dismiss three specifications of violating Article 120b, UCMJ, 10 U.S.C. § 920b, involving CK, and two additional specifications of Article 134, UCMJ, including production and possession of child pornography. Further, the convening authority agreed to refer the two specifications of indecent conduct to a special court-martial. The convening authority approved and accepted Appellant's offer on 24 May 2022.

## II. DISCUSSION

### A. Military Judge's R.C.M. 910(e) Factfinding Inquiry

For the first time on appeal, Appellant asserts the military judge went beyond the necessary scope of R.C.M. 910(e) during the factfinding inquiry. We disagree.

#### 1. Additional Background

Appellant chose to be tried by military judge alone and pleaded guilty, as he had previously offered. Appellant had the following exchange in the guilty plea introduction:

> [Military Judge (MJ)]: By your plea of guilty, you give up three important rights, but you give up these rights solely with respect to the offenses to which you have pled guilty. First, the right against self-incrimination, that is, the right to say nothing at all. Second, the right to a trial of the facts by this court, that is, your right to have this court-martial decide whether or not you are guilty based upon evidence the [P]rosecution would present and on any evidence you may introduce. Third, the right to be confronted by and to cross-examine any witness called against you. Do you have any questions about these rights?
>
> [Appellant]: No, Your Honor.
>
> MJ: Do you understand that by pleading guilty you no longer have these rights with respect to the offenses to which you pled guilty?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: If you continue with your guilty plea, you will be placed under oath, and I will question you to determine whether you are guilty. Anything you tell me may be used against you in the sentencing portion of the trial. Do you understand this?
>
> [Appellant]: Yes, Your Honor.

Trial counsel then placed Appellant under oath.

Pursuant to the plea agreement, Appellant agreed to a stipulation of fact. The stipulation of fact was admitted as Prosecution Exhibit 1 and was four pages long. Before addressing any substantive matters in the stipulation of fact, the military judge asked the following common preliminary questions:

> MJ: [Appellant], a stipulation of fact is an agreement among the trial counsel, your defense counsel, and you that the contents of the stipulation are true and if entered into evidence are uncontradicted facts in this case. No one can be forced to enter into a stipulation, so you should enter into it only if you truly want to do so. Do you understand this?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: Are you voluntarily entering into this stipulation because you believe it's in your best interest to do so?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: If I admit this stipulation into evidence it's going to be used in two ways: First, I will use it to determine if you are guilty of the offenses to which you have pled guilty. Second, I will use it to determine an appropriate sentence for you. Do you understand and agree to these uses of the stipulation?
>
> [Appellant]: Yes, Your Honor.

Within paragraph four of the stipulation of fact, Appellant stipulated as true the allegation in Specification 1 of the Charge (indecent conduct with a minor, CK). Within paragraphs five and six, Appellant stipulated as true certain facts and circumstances related to Specification 1 of the Charge. Consistent with the language of the charged specifications, CK was referred to as a "minor" in the stipulation of fact, paragraphs four through six. But due to her age as stipulated, 15 years old, the military judge stated that he would be "interpreting" the word "minor" as "child" because her age is below the age of consent under the UCMJ. Trial defense counsel affirmatively agreed with the military judge's interpretation and did not object. Appellant affirmatively agreed with the military judge's interpretation.

Within paragraph seven of the stipulation of fact, Appellant stipulated as true the allegation in Specification 2 of the Charge (possessing a topless photo of a minor). Within paragraphs eight, nine, and ten, Appellant stipulated as true certain facts and circumstances related to Specification 2 of the Charge. Prosecution Exhibit 2, later admitted into evidence, was the topless photograph referred to in paragraph nine, and within Specification 2 of the Charge.

Again, the military judge discussed "translating" the word "minor" in paragraphs seven through ten as "child." Again, both trial defense counsel and Appellant each affirmatively agreed with this "clarification."

The information provided in the stipulation of fact formed the basis to the military judge's factfinding inquiry. Once the military judge explained the elements of the offenses to which Appellant pleaded guilty, including all relevant definitions, he asked Appellant to state "in his own words" why Appellant believed he was, in fact, guilty. While stating in his own words that he was guilty of the offenses, Appellant also provided explanations that sounded like facts in mitigation and extenuation, such as "she asked me to," and "she brought . . . a condom." Subsequently, the military judge asked Appellant several follow-up questions to elicit a factual basis to better understand why Appellant believed he was guilty of the offenses.

In his own words, with respect to Specification 1 of the Charge, Appellant explained how he and CK met, how their relationship progressed, and how he intentionally performed oral and vaginal sex with CK as charged. Appellant also stated he "was not very aware of the legal aspect," but expected to be "judged" by others if they knew of the age difference. Appellant also admitted he was not honest with his Air Force friends about CK's age because he "knew it would be viewed as wrong." Further, Appellant stated he knew his "sexual interactions" with CK "reflect[ed] poorly on the military" and "negatively impact[ed] how the military [wa]s viewed by the public."

In his factfinding inquiry, the military judge asked Appellant several additional questions, focusing primarily on Appellant's understanding of how his conduct was indecent and service discrediting, which are elements of the charged offenses. More specifically, the military judge asked Appellant questions focused on his role in the sexual conduct as distinguished from CK's participation. As a result of the military judge's follow-up questions, Appellant explained he believed that due to her age and position in life, CK did not have the "maturity" to engage in this type of conduct, and that Appellant "should have stopped" the conduct instead of "performing those acts." Further, Appellant explained that although he was unaware of any negative perceptions of him or the Air Force held by CK, her family, or his own family because of his actions, he agreed that if members of the public became aware, they would hold him and the Air Force in lower esteem. Trial defense counsel did not object to any questions the military judge posed in relation to Specification 1 of the Charge.

In his own words, with respect to Specification 2 of the Charge, Appellant explained that he allowed CK to send him the topless photograph of herself via electronic methods, that he maintained possession of the photograph during

the charged timeframe, and that he stored it in a "hidden folder" on his phone. Again, the military judge asked several follow-on questions. In response to those questions, Appellant described the photograph in detail, and explained that possession of the photograph was indecent because CK did not have the requisite age to appreciate that an image of herself on another's phone could be unlawful. Appellant explained that this image was created to continue sexual intimacy between them, and but for the unlawful sexual intimacy that had already occurred, he would not have had this image, as he did. Appellant's possession of the image of a "child's" breasts for purposes of creating sexual intimacy was grossly vulgar, repugnant to common propriety, and tended to excite sexual desire and deprave morals with respect to sexual relations. Further, Appellant explained that he had hidden this photograph on his phone not only for concern of CK's privacy, but also because he "understood it would create a legal issue." Further, Appellant explained that if the public were aware he was in possession of that photograph for purposes of maintaining sexual intimacy with CK, they would not "see" the Air Force as maintaining the high standards that the service requires of itself and of its members. Trial defense counsel did not object to any questions the military judge posed in relation to Specification 2 of the Charge.

### 2. Law

#### a. Plain Error Review

"A party may claim error in a ruling to admit . . . evidence only if the error materially prejudices a substantial right of the party and . . . if . . . a party, on the record . . . timely objects or moves to strike[ ] and states the specific ground, unless it was apparent from the context." Mil. R. Evid. 103(a)(1).

"Where an appellant has not preserved an objection to evidence by making a timely objection, that error will be forfeited in the absence of plain error." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (quoting *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F)). "A timely and specific objection is required so that the [trial] court is notified of a possible error, and so [that the military judge] has an opportunity to correct the error and obviate the need for appeal." *Id.* (quoting Stephen A. Saltzburg, et al., Federal Rules of Evidence Manual § 103.02(1) (10th ed. 2011)).

Under a plain error review, an appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (internal quotation marks and citations omitted). "The plain-error doctrine 'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Ruiz*, 54 M.J. 138, 143 (C.A.A.F. 2000) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Hays*, 62 M.J. 158, 166 (C.A.A.F. 2005) (quoting *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)). This is because a "military judge is presumed to know the law and apply it correctly, [and] is presumed capable of filtering out inadmissible evidence . . . ." *Robbins*, 52 M.J. at 457 (citation omitted). Therefore, "plain error before a military judge sitting alone is rare indeed." *Id.* (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)) (additional citation omitted).

### b. Elements of the Charged Offense

Appellant was charged with and convicted of two specifications of indecent conduct in violation of Article 134, UCMJ. For each specification, the military judge was required to ensure a factual basis existed to establish each element of the offenses to which Appellant was pleading guilty: (1) that Appellant engaged in certain conduct; (2) that the conduct was indecent; and (3) that under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), pt. IV, ¶ 104.b.

The first element in Specification 1 was that "within the continental United States, between on or about 4 November 2021 and on or about 3 January 2022, [Appellant did] commit indecent conduct, to wit: engaging in sexual acts with a minor." The first element in Specification 2 was that "within the continental United States, between on or about 4 November 2021 and on or about 3 January 2022, [Appellant did] commit indecent conduct, to wit: possessing a topless photo[graph] of a minor."

"Indecent means that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." 2019 *MCM*, pt. IV, ¶ 104.c.(1). "'Discredit' means to injure the reputation of;" this element "makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." 2019 *MCM*, pt. IV, ¶ 91.c.(3). "'Minor' means any person under the age of 18 years." 2019 *MCM*, pt. IV, ¶ 95.c.(7). "The term 'child' means any person who has not attained the age of 16 years." 2019 *MCM*, pt. IV, ¶ 62.a.(h)(4). "A child not legally married to the person committing the sexual act . . . cannot consent to [the] sexual act." 2019 *MCM*, pt. IV, ¶ 62.a.(g). "'Possessing' means exercising control of something." 2019 *MCM*, pt. IV, ¶ 95.c.(8).

### *c. Permissible Scope of R.C.M. 910 Guilty Plea Inquiry*

A person's plea of guilty must be voluntary, with an understanding of all elements of each offense, and with sufficient explanation of fact. *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969).

"In order to ensure that pleas of guilty are not only knowing and voluntary but appear to be so, detailed procedural rules govern the military judge's duties with respect to the plea inquiry." *United States v. Soto*, 69 M.J. 304, 306 (C.A.A.F. 2011) (citing *United States v. King*, 3 M.J. 458, 459 (C.M.A. 1977)). The military judge's inquiry under R.C.M. 910(e) "is part and parcel of the providence of an accused's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty." *Id.* at 307 (citing *King*, 3 M.J. at 458–59).

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea. The accused shall be questioned under oath about the offenses." R.C.M. 910(e). "[I]t is an abuse of discretion if a military judge accepts a guilty plea without an adequate factual basis to support it." *United States v. Price*, 76 M.J. 136, 138 (C.A.A.F. 2017) (citing *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012)). "[A] military judge must elicit actual facts from an accused and not merely legal conclusions." *Price*, 76 M.J. at 138.

The military judge has broad discretion in conducting the R.C.M. 910(e) inquiry: "[u]nless the military judge has ranged far afield during the providence inquiry, the accused's sworn testimony will provide evidence 'directly relating to' the offenses to which he has pleaded guilty." *United States v. Holt,* 27 M.J. 57, 60 (C.M.A. 1988).

Our superior court has held that "waiver of the privilege against self-incrimination which is involved in a plea of guilty is not unlimited," *id.* at 59; therefore, if a military judge ranges "far afield" during the providence inquiry, there can be implications on the accused's rights against self-incrimination:

> If . . . the uncharged conduct is not closely connected to the offense to which [Appellant] has pleaded guilty . . . we see no reason why the military judge would need to ask about it or hear testimony thereon during the providence inquiry. Moreover, since the inquiry into uncharged misconduct would not seem reasonably foreseeable as part of the process of establishing the factual basis for guilty pleas, the waiver of Article 31, UCMJ, 10 [U.S.C.] § 831, rights and the privilege against self-incrimination involved in entering pleas of guilty would not extend to this uncharged misconduct.

*Id.* at 60.

### 3. Analysis

This issue is not about whether Appellant's plea was provident, but rather it is about the scope of the military judge's factfinding inquiry. In other words, the issue is whether the military judge went too "far afield" and inquired into aggravating facts unnecessarily, not only for purposes of determining whether Appellant was, in fact, guilty of the offenses for which he pleaded guilty, but also, potentially unnecessarily, for sentencing. As an example, the military judge asked whether Appellant believed that because both their parents permitted the romantic relationship, that made Appellant feel like "it wasn't as much of sexual abuse of a child" even if he believed it may have been "morally wrong," or whether Appellant believed he was "morally . . . right?" We find the military judge did not err.

When Appellant pleaded guilty, he stated he accepted responsibility, but failed to adequately explain how his actions met the definitions of indecency and service discrediting; both elements being broad concepts that necessarily require consideration of the surrounding facts and circumstances. Although Appellant stated as a matter of his plea that he was guilty, he repeatedly attempted to minimize his culpability, while also failing to provide adequate specificity. Consequently, the military judge followed up with detailed questions, focusing Appellant on Appellant's conduct. The military judge remained focused on the elements of the offenses and did not seek unrelated matters or uncharged misconduct. The fact that the military judge elicited additional facts and circumstances surrounding the charged misconduct, beyond those which the Appellant was initially inclined to offer during his plea allocution, is not emblematic of a plain error, but illustrative of the military judge conscientiously executing his duties under R.C.M. 910(e) to ensure the factual accuracy of the plea. *See Price*, 76 M.J. at 138. Therefore, the military judge did not err.

## B. Sentence Severity

### 1. Additional Background

The maximum punishment Appellant could have been sentenced to based solely upon Appellant's guilty plea, *inter alia*, was a bad-conduct discharge, confinement for 12 months, forfeiture of two-thirds pay per month for 12 months, and reduction to E-1. Per the plea agreement, the convening authority agreed the military judge must, upon acceptance of the guilty pleas, enter a

sentence that included confinement of no less than 90 days and no more than 180 days.[2] There were no additional limitations on the sentence.

Appellant argues his sentence of 180 days' confinement plus a bad-conduct discharge is inappropriately severe for several reasons. In his words, Appellant states the age difference between Appellant and CK at the time of the sexual conduct was just three years, the nature of the sexual conduct was consensual, and they had their parents' knowledge and consent to date. CK took the topless photograph herself and sent it to Appellant. And as discussed *supra*, Appellant asserts that the military judge erred by asking questions that dove into matters in aggravation, including matters which the Government was unable to provide, and therefore, misused that information to levy an unduly harsh sentence.

Additionally, Appellant argues that the information introduced in his oral unsworn statement—including that he was physically abused as a child by his father and stepmother, and that he found value in his life after beginning his romantic, monogamous, relationship with CK—were matters in mitigation not accepted by the military judge, as reflected in the sentence. Finally, the facts that Appellant took responsibility for his actions and cooperated in his court-martial by waiving his pretrial hearing and agreeing to a trial date within three weeks of preferral were undervalued. Considering all this, and that Appellant had no other misconduct in his brief career, Appellant requests relief from this court by setting aside the bad-conduct discharge.

In the Government's sentencing case, trial counsel admitted Appellant's personal data sheet. The Government did not offer any other presentencing evidence and did not call any witnesses. There was no victim impact statement. In the Defense's sentencing case, there were no witnesses called[3] or exhibits admitted. Appellant provided an oral unsworn statement. The Government advocated for 180 days' confinement for each specification, to run concurrently,

---

[2] The plea agreement did not comply with R.C.M. 705(c)(2)(F) in that it did not identify the specifications to which the minimum and maximum terms of confinement applied, and further, whether the sentences to confinement would run concurrently or consecutively. The military judge discussed this anomaly with both parties and Appellant during the plea agreement inquiry. All agreed the minimum and maximum confinement lengths applied to each specification and would run concurrently.

[3] Appellant waived his right to call live witnesses at the Government's expense, as part of his plea offer. However, he admitted to the military judge when discussing this term, that he understood he was able to provide remote witness testimony in his presentencing hearing through telephonic testimony, video testimony, or affidavits. However, he elected not to do so.

and a bad-conduct discharge; and the Defense advocated for 90 days' confinement, for each specification, to run concurrently. The military judge sentenced Appellant to a bad-conduct discharge, reduction to the grade of E-1, a reprimand, and 180 days confinement for Specification 1 and 90 days confinement for Specification 2—to be served concurrently.

**2. Law**

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved based on the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Fields*, 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015) (quoting *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006)) (additional citation omitted).

While we have significant "discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency." *Id.* (citations omitted).

**3. Analysis**

At the time of his offenses, Appellant was a young adult who had recently joined the Air Force. In fact, he had just graduated from basic military training the same day as the indecent sex acts with CK occurred. His immaturity as a young adult is not in question. Nonetheless, the fact remains that he knew his sexual conduct with CK was unlawful and therefore attempted to hide her age from his new friends in the Air Force. Additionally, he took measures to hide the topless photograph of CK in his electronic files on his cell phone. The nature of the offenses is indecent not only because of the age difference, but also because of the maturity difference between Appellant and CK. Appellant's enlistment in the Air Force was less than one year before his court-martial. Although there was no other misconduct, Appellant was still in training. As such, he had a minimal record of service. We have reviewed the entire record of trial and find no other notable facts or circumstances. After considering this Appellant, the nature and seriousness of his offenses, his record of service, and all matters contained in the record of trial, we are not persuaded his sentence is inappropriately severe. *Fields*, 74 M.J. at 625.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court